STEPPE, Appellant and Cross–Appellee, et al.

v.

KMART STORES, Appellee and Cross–Appellant.

[Cite as *Steppe v. Kmart Stores* (1999), 136 Ohio App.3d 454.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 74884.

Decided Nov. 29, 1999.

*Crosby and Kelley, William M. Crosby* and *Nancy A. Kelley,* for Carolyn M. Steppe.

*Arter & Hadden, Gregory V. Mersol* and *Thomas J. Piatak,* for Kmart Stores.

*Meyers, Hentemann & Rea Co., L.P.A., Henry A. Hentemann; Daniel M. Roth,* for James Workman.

---

TIMOTHY E. McMONAGLE, Presiding Judge.

Plaintiff-appellant Carolyn M. Steppe appeals from the decision of the Cuyahoga County Court of Common Pleas that directed a verdict in favor of defendant Kmart Stores on her claim of intentional workplace sexual harassment and from the judgment that vacated the jury verdict in her favor on her remaining claims and granted defendant Kmart's motion for a new trial on those claims. Defendant/cross-appellant Kmart challenges the trial court's denial of its motions for directed verdict and for judgment notwithstanding the verdict with respect to appellant's remaining claims and, in the alternative, contends that evidentiary errors tainted the verdict. We find cross-appellant Kmart's first and second assigned errors to be well taken and reverse.

Appellant along with plaintiffs Kimberly Valliere, Barbara Steppe, and Judith Valliere commenced the within matter on October 1, 1996 in a nine-count complaint filed in the Cuyahoga County Court of Common Pleas. In counts one and two, Carolyn Steppe and Kimberly Valliere alleged sexual assault and battery and intentional/negligent infliction of emotion distress against defendant James Workman; in counts three and four, they alleged negligence and asserted a claim for liability under R.C. 3109.10 against James' mother, defendant Janice Workman; and in counts five, six, seven and eight, they asserted claims against defendant-appellee Kmart based upon *respondeat superior,* negligence in permitting a hostile workplace, negligent hiring, retention and supervision of its employee James Workman and intentional/negligent infliction of emotional distress; in count nine of the complaint, plaintiffs Barbara Steppe and Judith Valliere, mothers of Carolyn and Kimberly, asserted claims for filial loss of consortium. In answer to the complaint all defendants denied the claims against them. Defendant James Workman filed counterclaims against Carolyn Steppe and Kimberly Valliere alleging sexual harassment and asserted a cross-claim

against Kmart claiming that it maintained a hostile work environment. On March 24, 1998, Kmart was granted summary judgment on James Workman's cross-claim but was denied judgment as to the claims brought by plaintiffs. The same day, James Workman dismissed his counterclaims for sexual harassment against Carolyn Steppe and Kimberly Valliere without prejudice. On April 10, 1998, plaintiffs dismissed both claims against Janice Workman.

The matter went to trial on April 8, 1998 on the remaining claims: Barbara Steppe's and Judith Valliere's claims for loss of filial consortium; Kimberly Valliere's and Carolyn Steppe's claims against Kmart based upon *respondeat superior* for intentional workplace sexual harassment (hostile workplace), for punitive damages, for negligent infliction of emotional distress, for negligence in failing to prevent sexual harassment in a hostile workplace, and for its negligent hiring, supervising, and retaining of its employee, James Workman; and all remaining claims asserted against defendant James Workman. At the close of the plaintiffs' case, Kmart moved for a directed verdict on all claims against it. Over plaintiffs' objection the motion was granted in part, whereby the court dismissed the filial consortium claims of Barbara Steppe and Judith Valliere and Carolyn's and Kimberly's claims against Kmart for liability based upon *respondeat superior*, for negligent infliction of emotional distress, and for punitive damages, finding no evidence of malice was shown.

The testimony and evidence presented at trial revealed that Carolyn Steppe, Kimberly Valliere, and James Workman were parttime teenage employees of the Kmart store in Seven Hills, Ohio. On November 2, 1994, seventeen-year-old James Workman was hired by Kmart in the position of stockboy, "0–1." James's mother, Janice Workman, was considered a reliable and trustworthy employee and James's brother was a good Kmart employee. James's application for a fidelity bond and his employment application both indicated that he had never been convicted of a felony or any offense other than a traffic violation. Carolyn Steppe, aged sixteen, was hired by Kmart on March 8, 1995 and worked primarily in the toy department. Kathy Holtsclaw, the human resources manager at the store, testified that her duties included hiring and scheduling of the employees, but she had no authority to terminate an employee. Holtsclaw interviewed and hired both James Workman and Carolyn Steppe. For each new employee, including James, Steppe, and Valliere, Holtsclaw conducted orientation, showed a Kmart video and distributed the employee manual, which included the procedure by which complaints of sexual harassment were to be handled.

Carolyn testified that she met James Workman on her first day at work, but had no problems with him until the incident which occurred on or about April 20, 1995. That day, she went into a stockroom to get a sandbox for a customer and requested the assistance of Workman. During this encounter, Workman hugged

and kissed her; and although she resisted, he exposed his penis and made her touch it, placed his hand into her pants, and digitally penetrated her. Carolyn testified that Workman left the stockroom "as if nothing happened"; she went to the bathroom, finished her shift, and left the store without telling anyone. She remained at home for the next six weeks unable to go to work or school because she felt nauseous and depressed. Her mother, noting Carolyn's inability to eat, took her to her pediatrician and then to a specialist due to her stomach complaints. However, Carolyn still failed to confide in her mother or the physicians regarding the assault by Workman.

In May 1995, while Carolyn was still absent from her job, Elizabeth Presley, another teenage Kmart employee, while working in the "eatery" area of the store, needed assistance with the cash register tape before closing. Workman came to fix the cash register and called Presley over to show her how to fix it. Before she left for the night, she went to the back room where the schedules were posted to leave a note for the next day's employee regarding the cash register problem. Workman came into the back room and shook her hand, saying, "[W]e got it fixed." As he shook her hand, he pulled her over and tried to hug and kiss her. When she resisted, Workman released her and she went back to the eatery to tape the note onto the cash register. Workman came up behind her and patted her on the buttocks. The next day, Presley informed Assistant Manager Bill Goliat of Workman's behavior and Goliat conveyed her complaint to Kathy Holtsclaw. This complaint was the first complaint of harassment by Workman to be received by the Kmart management. On May 19, Richard Ashton, the General Manager of the store, met with James Workman concerning Presley's allegation. Workman denied her allegation in a manner deemed "credible" by Ashton so Ashton advised him that sexual harassment of employees is not tolerated and Workman may not touch Kmart associates. After meeting with Workman, Ashton met with his associate managerial staff to make them aware of Presley's sexual harassment complaint and to verify that there were no other reports of problems. Kmart policy classifies employee behavior causing harm to the company or potentially a threat to another associate as a "Type A" behavior calling for immediate termination. Ashton determined that Workman not be terminated immediately as a "Type A" offender because the allegations were denied by Workman and unsubstantiated.

On June 7, Carolyn Steppe returned to work for the first time since Workman assaulted her. While she was explaining her extended absence due to Workman's assault to another employee, co-worker Nick Filipelli overheard her story and told her that Workman had been involved in other incidents with female associates. At Filipelli's prompting, Carolyn told Kathy Holtsclaw of the events of April 20 and submitted a written report at Holtsclaw's request but she failed to

convey all the details of the event, omitting the fact that Workman exposed himself and forced her to touch his penis. Holtsclaw testified that she told Carolyn to get a manager if she felt threatened by Workman while in the store and assured her that she and Workman would not be scheduled to work together after June 9. Holtsclaw contacted Richard Ashton at home that day, and he advised her to take a statement from Carolyn, contact the Kmart district manager Brosky, and follow the chain of command. Brosky further advised Holtsclaw to call John Rocholl at the regional office of Kmart International Headquarters ("KIH"). The personnel advisors at KIH directed Holtsclaw to take the whole story and fax all the information to them. The next day, June 9, Richard Ashton confronted Workman about Carolyn Steppe's complaint and reviewed Kmart's sexual harassment policy with Workman, but Workman denied that the event occurred and signed a statement to that effect.

John Rocholl, after reviewing the information forwarded to him at the KIH Regional Office, concluded that two similar instances of alleged sexual harassment along with Workman's poor work performance would warrant his termination. Although the decision had been made that Workman would be terminated, Rocholl requested Brosky speak directly to Workman to determine whether, when confronted, Workman would admit or deny the allegations against him. Thus, on June 21, because Ashton was on vacation, Brosky along with a regional loss prevention manager, Mr. Perra, arrived at the Seven Hills store to terminate Workman. However, before Workman met with the outside managers, he confronted Kathy Holtsclaw in an attempt to tender his resignation by giving two weeks' notice. The managers determined that Workman's resignation was to be effective immediately. At some point after his termination, Workman showed up at the store one afternoon to meet his mother for lunch. His appearance was noted by Carolyn who reported it to Holtsclaw who checked around for his whereabouts and determined he had already left the store.

During the same time frame, on June 9, the city of Seven Hills received Carolyn's complaint, as filed by her mother, that she was sexually attacked by James Workman about a month prior. Detective Mark Horvath investigated and found several other young women may have been touched inappropriately while working at Kmart. On June 14, Det. Horvath apprised Workman of his rights and took a statement from Workman, who was accompanied by his mother, in which, although he admitted to kissing and exposing himself to Carolyn Steppe and forcing her to touch his penis, he said he did not know if he inserted his finger into her vagina. The police did not conduct interviews at Kmart but Kmart's files were subpoenaed and were produced without problem.

On June 21, after Workman's termination, Jamie Elswick, another part-time, teen-age Kmart employee, complained to security man Ken Welch that six days

earlier, on June 15, Workman injured her when he grabbed her and threw her to the floor near the time clock. A loss control statement was completed about her complaint. Jamie had been Workman's former girlfriend prior to her employment at Kmart and remained friendly with him and was still a good friend of his mother. Her usual assignment at Kmart was as a "greeter" at the front door. Because Workman was a stockboy, he was not restricted to a limited area of the store. Jamie testified that Workman frequently tapped her on her buttocks as he walked past her and, although she observed him frequently pat the cashiers on their buttocks, she failed to report his actions to the management. She admitted that she was unaware of whether management knew of Workman's harassing behavior but said that when he was discovered to be up front, the head cashier told him to get back to work.

Plaintiff Kimberly Valliere's claims arose from her allegation of two incidents of harassment by Workman during the month of May 1995. She recalled that the first incident occurred sometime in May when she went to retrieve a television from the stockroom. She said that Workman was also in the stockroom, that he pressed against her and pushed his tongue into her mouth, and that she could feel his erection, but that he fled when a customer came near. Although she failed to report the attack at closing that night, she said she mentioned to assistant manager Bill Goliat that Workman was "harassing" her. She conceded that she offered no details about the incident to him. Then, several nights later, she said a second incident occurred in the stockroom. She claimed that Workman again attempted to hug and kiss, but that this time he also touched her breast. The next day, she told Ashton that Workman was "bugging" her, but again she failed to inform the management of Workman's sexually offensive behavior. As a result of these incidents, Kimberly testified that she was scared and suffered from depression and that her stomach problems "flared up."

Psychologist Deborah Koricke, Ph.D., was called upon by plaintiffs' counsel to evaluate whether Kimberly and Carolyn suffered psychological damage as a result of Workman's alleged sexual harassment. Dr. Koricke saw Kimberly four times. She tested and evaluated Kimberly in November 1995 and early 1996 and concluded that she was very distressed with anxiety and depression and suffered from post-traumatic stress disorder. Dr. Koricke met with Carolyn three times in November and December 1995 and January 1996 for testing and for the evaluation of test results. Dr. Koricke said that Carolyn relayed the particulars of the incident to her and explained that she took sick leave from both school and work during May 1995 due to the incident. Carolyn's test results revealed that she was free of disabling anxiety or guilt. Moreover, Carolyn denied all symptoms of depression and posttraumatic stress disorder. Dr. Koricke noted no permanency or residual effects on either girl as a result of the incidents.

At the close of all testimony, Kmart renewed its motion for directed verdict on the two claims remaining against it, negligence in maintaining a hostile work environment and negligence in the hiring and in the retention of James Workman. The motion was denied by the court and the matter went to the jury. The jury answered a series of ten interrogatories and returned verdicts in favor of Carolyn Steppe against James Workman for compensatory damages in the amount of $13,000 and punitive damages in the amount of $20,000. The jury found in favor of Carolyn Steppe against Kmart in the amount of $300,000. The jury found in favor of James Workman on Kimberly Valliere's claims against him and in favor of Kimberly Valliere on her claims against Kmart in the amount of $50,000.

Kmart, asserting that insufficient evidence was presented to support the verdicts and that the jury's answers to the interrogatories were inconsistent with the verdicts, moved the court alternatively for judgment notwithstanding the verdict pursuant to Civ.R. 50(B); for a new trial pursuant to Civ.R. 59(A) and 49(B); and for judgment on Kimberly Valliere's claims. On July 6, 1998, the trial court, in a written opinion, overruled Kmart's motion for judgment notwithstanding the verdict, granted Kmart's motion for judgment on Kimberly Valliere's claims and granted Kmart's motion for a new trial. This appeal followed in which both Kimberly Valliere and Carolyn Steppe appealed the vacation of the verdicts entered in their favor. Kmart cross-appealed. Subsequently, Kimberly Valliere settled her claims and dismissed her appeal. Only the claims of appellant Carolyn Steppe as brought against Kmart are at issue in the within appeal. In this appeal appellant Carolyn Steppe advances two assignments of error, and cross-appellant Kmart advances six assignments of error.

Appellant Carolyn Steppe advances the following assignments of error:

"I. The judge erred in failing to permit plaintiff to proceed on her workplace sexual harassment claim, to admit evidence, and to instruct the jury on the elements of the tort of workplace sexual harassment and punitive damages against the Kmart Corporation.

"II. The trial court erred by vacating the jury's verdict for Carolyn Steppe against Kmart and granting the defendant Kmart's motion for a new trial."

Kmart advances the following six assignments of error on cross-appeal for our review:

"I. The trial court erred in denying Kmart's motion for directed verdict.

"II. The trial court erred in denying Kmart's motion for judgment notwithstanding the verdict.

"III. The trial court erred in allowing evidence and argument concerning Kmart's status as a large taxpayer and in failing to give a curative instruction.

"IV. The trial court erred in allowing evidence and argument concerning Kmart's communications with counsel.

"V. The trial court erred in allowing evidence and argument concerning James Workman's criminal record and in failing to give a curative instruction.

"VI. The trial court erred in allowing evidence and argument concerning Steppe's workers' compensation claims."

In her first assigned error, Carolyn's claims that the trial court erred in granting Kmart's motion for directed verdict on her claim of intentional workplace sexual harassment and her claim for punitive damages and contends that she presented detailed evidence on each of the required elements. On the other hand, Kmart asserts that it was entitled to judgment in its favor on both claims under the standard for intentional creation of hostile work environment and for punitive damages as the evidence presented was insufficient to support either claim. We agree.

■ A motion for a directed verdict is to be granted when construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to that party. Civ.R. 50(A). This court reviews a motion for directed verdict *de novo*. Cf. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, 271, 271–272. The question before us is whether sufficient evidence was presented to sustain the claim of intentional sexual harassment against Kmart and whether sufficient evidence was presented to support the conclusion that Kmart's actions demonstrate malice.

■ To prevail on a claim of intentional sexual harassment in the workplace (hostile work environment discrimination) the employee must demonstrate five elements: " '(1) [t]hat the employee was a member of a protected class; (2) [t]hat the employee was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) [t]hat the harassment complained of was based on sex; (4) [t]hat the employee's submission to the unwelcome advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in tangible job detriment; and (5) [t]he existence of *respondeat superior* liability.' " *Madera v. Satellite Shelters, Inc.* (Aug. 12, 1998), Cuyahoga App. No. 73172, unreported, 1998 WL 474189, at *3, quoting *Takach v. Am. Med. Tech., Inc.* (1998), 128 Ohio App.3d 457, 464–466, 715 N.E.2d 577, 582.

■ However, *respondeat superior* liability for the acts of an employee acting outside the scope of employment will only attach where the employer has the ability and knowledge to control the employee. *Kerans v. Porter Paint Co.* (1991), 61 Ohio St.3d 486, 575 N.E.2d 428.

■ Although the evidence shows that on or about April 20, 1995, appellant Carolyn Steppe was subjected to sexual harassment in the workplace by James Workman, it is undisputed that James Workman was not a supervisor of Carolyn Steppe. No evidence was presented to show that Carolyn's submission to Workman's unwelcomed advances was an express or implied condition for receiving job benefits or that her refusal to submit to these advances would have resulted in a tangible job detriment. *Madera.* No evidence was presented that Kmart, the employer, was aware of the unwelcome advances of its employee until approximately six weeks after the incident occurred. No evidence was presented to demonstrate that Kmart either knew or should have known that its employee, James Workman, would perform a criminal act. No evidence was presented to show that Workman posed a threat of harm to his fellow employees prior to his assault of Carolyn. Thus, we find that sufficient evidence was not presented to support a claim of intentional harassment in the workplace and that the trial court properly directed the verdict in favor of Kmart on Carolyn Steppe's claim of intentional sexual harassment in the workplace.

■ Moreover, in order to recover punitive damages a plaintiff must demonstrate that the defendant was motivated by malice. *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174. Malice is defined as the state of mind under which a person's conduct is "characterized by hatred, ill will or a spirit of revenge" or "conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Id.* at syllabus. No evidence was presented at trial that Kmart acted with hatred, ill will, or a spirit of revenge. Further, because there is no evidence in the record that Kmart either knew or should have known that Workman posed a danger to its employees prior to his assault on Carolyn, it cannot be said that Kmart held such a conscious disregard for Carolyn's safety that it permitted a situation that had a great probability of causing substantial harm. Thus, there was insufficient evidence presented to support Carolyn's claim for punitive damages against Kmart. The trial court properly directed the verdict in favor of Kmart on Carolyn Steppe's claim for punitive damages. Accordingly, we find appellant Carolyn Steppe's first assignment of error is not well taken.

We next consider together Kmart's first and second assigned errors in its cross-appeal because we find our determination to be dispositive of the remaining issues in this appeal. In its first assigned error, Kmart asserts that the trial court erred when it denied its motion for directed verdict. In its second assigned error, Kmart contends that the trial court erred when it denied its motion for judgment notwithstanding the verdict asserting insufficient evidence was presented to support the verdict that found that Kmart negligently hired, supervised, and retained its employee, James Workman.

■■■ "The applicable standard of review to appellate challenges to the overruling of motions for judgment notwithstanding the verdict is identical to that applicable to motions for a directed verdict." *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 74 O.O.2d 427, 344 N.E.2d 334; *McKenney v. Hillside Dairy Co.* (1996), 109 Ohio App.3d 164, 176, 671 N.E.2d 1291, 1299, citing *A.B.C.* "A motion for judgment notwithstanding the verdict pursuant to Civ.R. 50(B) tests the legal sufficiency of the evidence." *Brooks v. Brost Foundry Co.* (May 2, 1991), Cuyahoga App. No. 58065, unreported, 1991 WL 69341, at *1. " 'A review of the trial court's denial of appellant's motion for a directed verdict and motion for judgment notwithstanding the verdict requires a preliminary analysis of the components of the action * * *.' *Shore, Shirley & Co. v. Kelley* (1988) 40 Ohio App.3d 10, 13, 531 N.E.2d 333, 337." *Star Bank Natl. Assn. v. Cirrocumulus Ltd. Partnership* (1997), 121 Ohio App.3d 731, 743, 700 N.E.2d 918, 925, ·quoting *McKenney v. Hillside Dairy Co.*, 109 Ohio App.3d at 176, 671 N.E.2d at 1299, and citing *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124, 127, 522 N.E.2d 511, 514. Accordingly, the motions test the legal sufficiency of the evidence to go to the jury and therefore present a question of law which we review independently, *i.e., de novo,* upon appeal. See *Grau v. Kleinschmidt* (1987), 31 Ohio St.3d 84, 90, 31 OBR 250, 255, 509 N.E.2d 399, 404; *Eldridge v. Firestone Tire & Rubber Co.* (1985), 24 Ohio App.3d 94, 24 OBR 164, 493 N.E.2d 293. A motion for judgment notwithstanding the verdict should be denied if there is substantial evidence upon which reasonable minds could come to different conclusions on the essential elements of the claim. *Posin,* 45 Ohio St.2d at 275, 74 O.O.2d at 430, 344 N.E.2d at 338. "Conversely, the motion should be granted where the evidence is legally insufficient to support the verdict." *Cty. Sav. Bank v. Sain* (Apr. 21, 1992), Franklin App. No. 91AP-380, unreported, 1992 WL 82794, at *3.

In *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 172, 539 N.E.2d 1114, 1117, the court wrote in pertinent part: "The test for granting a directed verdict or judgment n.o.v. is whether the movant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the non-movant."

■■■ The party seeking to prevail on a claim for the negligent hiring, supervision and retention of an employee by an employer must show: " ' "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." ' *Ruta v. Breckenridge–Remy Co.* (Dec. 12, 1980), Erie App. No. E–80–39, unreported." *Evans v. Ohio State Univ.* (1996), 112 Ohio App.3d 724, 739, 680 N.E.2d 161, 171; *Walters v. Hawken School* (Jan. 28, 1999),

Cuyahoga App. No. 75274, unreported, 1999 WL 43326. At issue in this case are the third and fifth elements of the claim. Thus, the questions which we must decide are whether Kmart had actual or constructive knowledge of James Workman's propensity for sexual misconduct, whether Kmart was negligent in hiring or retaining Workman, and whether this negligence was the proximate cause of the assault on Carolyn Steppe.

"An employer may be negligent if he knew, or should have known, that his employee had a propensity for violence and that the employment might create a situation where the violence would harm a third person." *Staten v. Ohio Exterminating Co., Inc.* (1997), 123 Ohio App.3d 526, 530, 704 N.E.2d 621, 624. "'The foreseeability of a criminal act depends upon the knowledge of the defendant, which must be determined by the totality of the circumstances, and it is only when the totality of the circumstances are "somewhat overwhelming" that the defendant will be held liable.'" *Staten*, quoting *Evans*, *supra* at 742, 680 N.E.2d at 173 and citing *Feichtner v. Cleveland* (1994), 95 Ohio App.3d 388, 396, 642 N.E.2d 657, 662–663. In the absence of a "known criminal propensity," a criminal act by an employee is not reasonably foreseeable. *Peters v. Ashtabula Metro. Hous. Auth.* (1993), 89 Ohio App.3d 458, 462, 624 N.E.2d 1088, 1091.

Appellant argues that Kmart knew or should have known of James Workman's sexual harassment of employees prior to his assault on Carolyn Steppe on the basis of the testimony of Jamie Elswick. Elswick testified that Workman often tapped her and other employees on the buttocks when he walked past them in an area near the front of the store. However, on cross-examination, Elswick conceded that she was unaware of any Kmart manager who saw Workman touch her. She did not know whether any supervisor saw Workman touch the other employees. Elswick never told anyone that Workman was harassing other employees, and she did not know whether any other employee had complained. The first complaint that she made to Kmart was on June 21, 1995, and after the complaint, she had no further problems with Workman at Kmart. Thus, even when we construe the evidence most strongly in favor of appellant, as we must do, we find the testimony of Elswick to be insufficient to demonstrate that Kmart either knew or should have known of Workman's criminal or tortious propensities and, therefore, were foreseeable.

Further, appellant implies that Kmart was negligent in its hiring of James Workman because it failed to investigate his criminal background, which she alleges would have revealed a prior juvenile adjudication for assault. However, the evidence presented demonstrated that Workman was referred for employment by his mother, a long-term employee and successful Kmart employee; he denied that he had any felony convictions in his job application and he denied that

he had been convicted of any offense other than a minor traffic violation in his application for a fidelity bond. Kmart was under no duty to conduct a criminal background check. *Kuhn v. Youlten* (1997), 118 Ohio App.3d 168, 177, 692 N.E.2d 226, 232. Even so, no evidence was presented that a background check would have revealed that Workman had a propensity for sexual harassment or sexual assault, thus, potentially putting Kmart on notice of such propensity.

Therefore, with the evidence presented, we find that appellant failed to establish Kmart knew or should have known of James Workman's criminal or tortious propensities. Thus, when we view the evidence in a light most favorable to appellant, we find that a reasonable person could only reach one conclusion on the evidence presented and that conclusion is adverse to appellant. In this case the totality of the circumstances are not "somewhat overwhelming" so as to impose liability upon Kmart. Because we find that sufficient evidence was not presented at trial to sustain the claim of negligent hiring, supervision, and retention of James Workman brought by appellant as to Kmart, we find that the trial court erred in failing to direct the verdict in favor of Kmart on appellant's claim of negligent hiring, supervision, and retention of James Workman and erred in failing to enter a judgment notwithstanding the verdict on appellant's claim. Cross-appellant Kmart's first and second assignments of error are well taken.

In consideration of our determination of appellant's first assigned error and cross-appellant's first and second assigned errors, we find appellant Carolyn Steppe's second assignment of error and cross-appellant Kmart's third, fourth, fifth and sixth assignments of error to be moot. See App.R. 12(A)(1)(c).

The judgment of the trial court is reversed, and judgment is entered for cross-appellant Kmart.

*Judgment accordingly.*

PATTON and ROCCO, JJ., concur.