Thomas **KLEPSKY** Plaintiff

v.

**DICK ENTERPRISES, INC.** Defendant

No. 1:97 CV 2488.

United States District Court,
N.D. Ohio,
Eastern Division.

April 24, 2001.

Robert E. Sweeney, Kevin E. McDermott, Law Offices of Robert E. Sweeney, Cleveland, OH, for Plaintiff.

Mark S. Floyd, Jordan Kent Breslin, Eric A. Rich, Thompson Hine, Cleveland, OH, for Defendants.

## ORDER DENYING MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL

WELLS, District Judge.

This case is before the Court on defendant Dick Enterprises, Inc.'s timely motion for judgment as a matter of law or, in the alternative, for a new trial, filed 14 February 2001. (Docket No. 86). Plaintiff Thomas Klepsky filed a response on 28 February 2000, (Docket No. 88), and Dick Enterprises replied on 1 March 2001, (Docket No. 89). For the reasons set forth below, the motion is denied.

### I. *Factual and Procedural Background*

In September of 1995, Mr. Klepsky was working as a carpenter for Dick Enterprises which had been hired to perform renovation work on the Veterans Memorial Bridge in Cleveland, Ohio. On 5 September of that year, Mr. Klepsky and two co-workers (Victor Burda and Chris Mohrman) were removing metal deck pans from certain sections of the bridge. Deck pans are large, twenty to twenty-five-pound sheets of metal used to help form and set in place newly poured concrete. On the Veterans Memorial Bridge Project, the deck pans were attached to the bridge by wooden four-by-fours which were in turn supported by metal brackets anchored to the bridge itself. The concrete was then poured between the bridge and the deck pan and allowed to set. When the concrete had hardened properly, workers use a motorized scissor lift to take them up approximately twenty feet until they were positioned underneath the deck pan. They would then remove the deck pan by first removing every other steel support bracket, then removing the four-by-fours which supported the pan, and then loosening the pan from the concrete using a pneumatic device known as a chipping hammer or, if necessary, a sledgehammer. The pan would then either be lifted down onto the scissor lift or would drop down on its own and be placed to one side.

When Mr. Klepsky and his co-workers reached the last deck pan on the bridge, they found it was stuck firmly in the concrete. They removed all the brackets surrounding it and then went to get the chipping hammer but discovered it was missing. Mr. Burda was sent to locate it. While Mr. Klepsky and Mr. Mohrman were waiting, Dick Enterprises's general foreman, Desi Trabucco, came over and asked why they were not working. Mr. Klepsky explained they were waiting for the return of the chipping hammer so that they could continue stripping the deck pans. According to the testimony at trial, Mr. Trabucco wanted Mr. Klepsky and Mr. Mohrman to try to remove the deck pan without waiting for the chipping ham-

mer. The three then discussed how this could be accomplished, and either Mr. Mohrman or Mr. Trabucco suggested tying a relatively short steel cable, or "choker," to the scissor lift and then lowering the lift to pull off the deck pan. Mr. Klepsky testified that he told both Mr. Mohrman and Mr. Trabucco that this was "not a good idea," that if the pan flew off the bridge it could "kill one of [them]." In response, Mr. Klepsky testified, the foreman "said just do it, give it a try, just do it." Mr. Klepsky further testified that he and Mr. Mohrman ultimately got into the scissor lift, raised it until it was underneath the deck pan, and attempted to wrap the choker around the deck pan and then attach the choker to the scissor lift. When the choker proved to be too short, Mr. Trabucco looked for a longer strap, found one nearby, and handed it to the two men. At that point, he returned to the construction trailer.

Mr. Klepsky and Mr. Mohrman then wrapped one end of a 20–foot nylon strap around the scissor lift and attached the other end to the deck pan. Both men got into the raised lift and began to exert downward pressure on the deck pan by lowering the lift. With tension still on the strap, Mr. Klepsky placed himself underneath the pan while standing in the scissor lift and applied further downward pressure on the deck pan by beating the end of it with a sledgehammer. After Mr. Klepsky had hit the deck pan several times, Mr. Mohrman warned him that the pan was coming loose. Mr. Klepsky dropped the sledgehammer and jumped behind Mr. Mohrman in the scissor lift. The deck pan swung down and hit Mr. Klepsky's hand, injuring him.

On 5 September 1997, Mr. Klepsky filed suit against Dick Enterprises in the Court of Common Pleas of Cuyahoga County, alleging Dick Enterprises had intentionally placed him in a hazardous environment in which injury was substantially certain to occur. The case was removed to this Court on 25 September 1997 on the basis of diversity jurisdiction. On 8 March 2000, this Court denied Dick Enterprises' motion for summary judgment, and the case was set for trial on 31 July 2000. After the defendants were granted a continuance, trial began on 29 January 2001 and went to the jury on 30 January 2001.

Among other questions, the jury was asked to decide: (a) whether Mr. Trabucco knew of the existence of a dangerous process, procedure, instrumentality or condition that was outside of the normal risks associated with Mr. Klepsky's work; (b) whether Mr. Trabucco knew that if Mr. Klepsky was subjected to such dangerous process, procedure, instrumentality or condition he was substantially certain to be harmed; and (c) whether he nonetheless acted to require Mr. Klepsky to perform the dangerous task. *Fyffe v. Jeno's, Inc.*, 59 Ohio St.3d 115, 570 N.E.2d 1108, 1112 (1991).[1] On 1 February 2001, the jury returned a verdict in favor of Mr. Klepsky in the amount of $150,000 as compensatory damages, and the jury declined to award punitive damages.

## II. *Motion for Judgment as a Matter of Law*

■ When one party in a diversity action files a motion for judgment as a matter of law, federal courts must apply "the standard of review used by the courts of the state whose substantive law governs the action." *See Morales v. American*

---

1. At the defendant's request, the jury was instructed that "the Ohio Supreme Court has held that an employee is not limited to recovery from the workers' compensation fund where his injury results from an employer's 'intentional tortious conduct.' An intentional tort is a narrow exception to workers' compensation law...." (Jury Instr. at C–8).

*Honda Motor Co.*, 151 F.3d 500, 506 (6th Cir.1998); *Chumbler v. McClure*, 505 F.2d 489, 491 (6th Cir.1974). Under Ohio law,

> [t]he test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.

*Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 344 N.E.2d 334, 338 (1976); *Steppe v. Kmart*, 136 Ohio App.3d 454, 737 N.E.2d 58, 66 (1999).

Dick Enterprises contends it is entitled to judgment as a matter of law for a variety of reasons. First, it maintains "the evidence presented at trial is insufficient to support a finding that Dick Enterprises had knowledge that injury to the plaintiff was substantially certain to occur." (Mtn. at 2). "It was undisputed at trial," Dick Enterprises states, "that the strap procedure had never previously been performed on the Veterans Memorial Bridge project" and there was thus no evidence that any prior accident had occurred. (Mtn. at 4). Second, Dick Enterprises argues "the plaintiff did not present evidence demonstrating that Mr. Trabucco required the plaintiff and his co-worker to remove the pan in the manner they did." (Mtn. at 11). Third, it states the plaintiff did not present evidence "from which a reasonable jury could find that Mr. Trabucco's requiring

him to use the scissor lift as a crane was what caused plaintiff's injuries." (Mtn. at 12). Fourth, it argues Mr. Klepsky failed to show "that Dick Enterprises required him to perform a 'dangerous' task within its business operation." (Mtn. at 13–14).

Construing the evidence most strongly in favor of Mr. Klepsky, these arguments are unavailing.

▉ Turning to the first argument, the jury heard sufficient evidence to conclude that Dick Enterprises' foreman, Desi Trabucco was substantially certain injury would occur. The jury heard evidence that the deck pans were eight feet long, approximately two to three feet wide, and weighed twenty to twenty-five pounds. They also heard, among other things, that the deck pan at issue was stuck fast to the bridge, that it was encrusted in concrete, that the men were approximately twenty feet in the air on the scissor lift when they tried to remove it, that they were acting in a manner contrary to normal practice, and that Mr. Klepsky told Mr. Trabucco he believed it would be dangerous to remove the pan by pulling on it with the strap because if the pan flew off the bridge it could "kill one of [them.]" Such evidence allowed the jury to conclude that Mr. Trabucco knew the activity was dangerous, that injury was substantially certain to occur, and that Mr. Trabucco's knowledge rested on both Mr. Klepsky's statement and common sense. Such evidence likewise allowed the jury to conclude that the lack of any prior incidents involving scissor lifts and deck pans was irrelevant. "Simply because people are not injured, maimed or killed every time they encounter a device or procedure is not solely determinative of the question of whether that procedure or device is dangerous or unsafe." *Cook v. C.E.I.*, 102 Ohio App.3d 417, 657 N.E.2d

356, 364 (1995).[2]

██ With respect to Dick Enterprises' second argument, the jury heard evidence that Mr. Trabucco ordered Mr. Klepsky and Mr. Mohrman to remove the pan in the manner they did. As stated earlier, the testimony at trial showed that Mr. Trabucco wanted Mr. Klepsky and Mr. Mohrman to try to remove the deck pan without waiting for the chipping hammer. Mr. Klepsky further testified that Mr. Mohrman suggested using a relatively short "choker" to pull off the deck pan, and Mr. Trabucco "said just do it, give it a try, just do it." According to Mr. Mohrman, the suggestion to use the choker came from Mr. Trabucco. Both Mr. Klepsky and Mr. Mohrman testified that, when the choker did not work, Mr. Trabucco looked for a longer strap, found one nearby, handed it to the two men, and returned to the construction trailer. Although Mr. Trabucco did not expressly order Mr. Klepsky to hit the deck pan with a sledgehammer, the jury could find he tacitly did so—particularly given the fact that the workers routinely used sledgehammers to loosen the pans and given the fact that Mr. Trabucco ordered them to remove the pan with a scissor lift and without waiting for the chipping hammer.

██ As to the defendant's third and fourth arguments, the jury had ample evidence to conclude that the accident was caused by pulling on the deck pan with the scissor lift and that the accident was outside the scope of the normal risks associated with Mr. Klepsky's work. Mr. Klepsky testified that workers often beat on the deck pans with a sledgehammer in order to loosen them. He also testified that the deck pans would typically drop straight down onto the scissor lifts at which point the men would lift them up and place them to one side. During the incident in question, however, while pulling on the deck pan with the scissor lift, the deck pan came loose and flew approximately forty-five feet "like a rocket." The jury could conclude that the sole and conclusive difference was the pressure exerted by the scissor lift and that the danger created by this pressure was beyond the risks Mr. Klepsky normally encountered.

Therefore, the defendant's motion for judgment as a matter of law is denied. Construing the evidence in the light most favorable to Mr. Klepsky, "there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions." *Posin*, 344 N.E.2d at 338.

### III. *Motion for a New Trial*

██ In the alternative, Dick Enterprises has moved for a new trial. Under Rule 59 of the Federal Rules of Civil Procedure, a "new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." "Generally, courts have interpreted this language to mean that a new trial is warranted when a jury

2. In its reply brief, Dick Enterprises refers at length to the Sixth Circuit's recent decision in *Cummins v. JGB Industries, Inc.*, No. 99–3462, 2001 WL 128336 (6th Cir. Feb.7, 2001). That case is not on point. In *Cummins*, the plaintiff argued his employer knew he was likely to be injured because the employer had failed properly to maintain a bucket truck. However, its failure to maintain the equipment did not necessarily put the plaintiff himself in danger on the day in question. It instead meant that any of the employees could be injured—or not—at some time. *Id.* at *4. In this case, the jury found Mr. Trabucco knew Mr. Klepsky himself was substantially certain to be injured in the course of removing the deck pan from the bridge.

has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion." *Holmes v. City of Massillon,* 78 F.3d 1041, 1045–46 (6th Cir.1996). As Wright & Miller explain, "[c]ourts do not grant new trials unless it is reasonably clear that prejudicial error has crept in the record or that substantial justice has not been done." 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure Civil 2d § 2803.

In this case, Dick Enterprises does not argue the damages were excessive or that the trial was in any way unfair. It instead suggests the verdict was against the weight of the evidence. In its words, it is entitled to a new trial "[f]or the same reasons set forth above demonstrating that the evidence presented at trial is insufficient to prove the mandatory elements of an intentional tort claim under Ohio law." (Mtn. at 15).

 However, the jury's verdict should be accepted if, as in this case, it is one which could reasonably have been reached. *Conte v. General Housewares Corp.,* 215 F.3d 628, 638 (6th Cir.2000); *see also Clay v. Ford Motor Co.,* 215 F.3d 663, 672 (6th Cir.2000). As discussed more fully above, the jury had sufficient evidence before it to conclude that Mr. Klepsky had satisfied all elements of an intentional tort claim under Ohio law. They had sufficient evidence to decide injury was substantially certain to occur, that Mr. Trabucco had ordered Mr. Klepsky to use the scissor lift and the nylon strap, that following Mr. Trabucco's orders caused Mr. Klepsky's injuries, and that pulling on the deck pan with the scissor lift was outside the normal risks associated with Mr. Klepsky's work.

For the reasons set forth in Section II and because the defendants have not shown the jury either reached an erroneous verdict or acted out of passion and prejudice, the motion for a new trial is denied. *Holmes,* 78 F.3d at 1045–46.

#### IV. *Conclusion*

Defendant Dick Enterprises' motion for judgment as a matter of law or, in the alternative, for a new trial is denied.

IT IS SO ORDERED.