DOE, Appellant,

v.

ARCHDIOCESE OF CINCINNATI, Appellee.

[Cite as *Doe v. Archdiocese of Cincinnati,* 167 Ohio App.3d 488, 2006-Ohio-2221.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050438.

Decided May 5, 2006.

490

Mezibov & Jenkins, L.L.P., Mark D. Mezibov, and Christian A. Jenkins, for appellant.

Dinsmore & Schohl, L.L.P., Mark A. Vander Laan, Kirk M. Wall, and Timothy S. Mangan, for appellee.

SYLVIA S. HENDON, Judge.

{¶ 1} Plaintiff-appellant, Jane Doe, has appealed from the trial court's entry granting the motion to dismiss of defendant-appellee, Archdiocese of Cincinnati. For the following reasons, we reverse the trial court's judgment in part.

## I. Factual Background

{¶ 2} This case arose out of a relationship that began in 1965 between Doe and her parish priest, Father Norman Heil. Doe alleges that Father Heil induced her into carrying on a sexual relationship with him and that as a result of the

relationship, Doe became pregnant. Doe further alleges that various members of the Archdiocese knew of the relationship between Doe and Father Heil and that the Archdiocese paid for her to spend a large portion of her pregnancy at Maple Knoll Hospital and Home, a private institution that housed unwed, pregnant teenagers.

{¶ 3} Doe asserts that Sister Mary Patrick, a former teacher of Doe's, pressured her throughout her pregnancy into giving her child up for adoption and into remaining silent about the identity of her child's father. Doe's complaint states that Sister Mary Patrick told Doe that her baby would not be baptized, and thus not cleansed of original sin, if Doe did not consent to an adoption. Doe was raised as a devout Roman Catholic, and she heeded Sister Mary Patrick's words. According to the complaint, Sister Mary Patrick continually attempted to coerce and intimidate Doe by telling her that her pregnancy was solely her fault and that she had to offer penance by giving up her child. Father Heil also told Doe that she had to place their child up for adoption because he could not remain a priest if the Church were required to pay for 18 years of child support. Doe's complaint further alleges that other agents of the Archdiocese intimidated Doe into giving up her child, although the complaint does not specify these other agents by name.

{¶ 4} Doe gave birth in November 1965, and she placed her child for adoption. Doe alleges that, as a consequence of giving up her child, she has suffered emotional, mental, and spiritual anguish for years.

{¶ 5} In December 2004, Doe filed suit against the Archdiocese, raising claims of negligent infliction of emotional distress, intentional infliction of emotional distress, tortious interference with familial relations, loss of filial consortium, breach of fiduciary duty, and negligent supervision and retention. The Archdiocese filed a Civ.R. 12(B)(6) motion to dismiss, which the trial court granted. The trial court apparently found that the statute of limitations barred Doe's claims.

## II. Standard of Review

{¶ 6} We review a trial court's ruling on a Civ.R. 12(B)(6) motion to dismiss de novo.[1] We must consider all the plaintiff's factual allegations to be true, and all reasonable inferences must be drawn in favor of the plaintiff.[2] A Civ.R. 12(B)(6) motion to dismiss should be granted only if a plaintiff can prove no set of facts that would entitle her to relief.[3]

---

1. *Battersby v. Avatar, Inc.,* 157 Ohio App.3d 648, 2004-Ohio-3324, 813 N.E.2d 46, at ¶ 5.

2. Id.

3. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 245, 71 O.O.2d 223, 327 N.E.2d 753.

### III. Equitable Estoppel

■ {¶ 7} Doe concedes that the statutes of limitations for her claims have expired, but she argues that the Archdiocese should be equitably estopped from asserting the statutes of limitations as a defense. Equitable estoppel "prevents a party from exercising rights which that party might have otherwise had against one who has, in good faith, relied upon the conduct of that party to his detriment." [4]

### A. Legal Requirements

■ {¶ 8} In order to establish equitable estoppel, a plaintiff must make a prima facie showing of four elements: (1) that the defendant made a factual misrepresentation, (2) that the misrepresentation was misleading, (3) that the misrepresentation induced actual reliance that was reasonable and in good faith, and (4) that the misrepresentation caused detriment to the relying party.[5] Regarding the first two elements, a plaintiff must show either actual or constructive fraud.[6]

■ {¶ 9} Additionally, when it is used in a statute-of-limitations context, a plaintiff asserting equitable estoppel must show either " 'an affirmative statement that the statutory period to bring an action was larger than it actually was' or 'promises to make a better settlement of the claim if plaintiff did not bring the threatened suit,' or 'similar misrepresentations or conduct' on defendant's part." [7]

### B. Application to Doe

■ {¶ 10} Doe's complaint is replete with allegations that the Archdiocese intimidated her into believing that the pregnancy was solely her fault, pressured her into giving up her child, and coerced her into remaining silent about the identity of her child's father. She was led to believe that her child unless adopted, would not be baptized.

{¶ 11} The Archdiocese urges us to conclude that these statements were not factual misrepresentations, but rather were expressions of subjective, personal beliefs. But drawing all reasonable inferences in favor of Doe, we conclude that Doe has effectively alleged that these statements by the Archdiocese constituted

---

4. *Daniels v. Bertke Elec. Co.* (Mar. 13, 1998), 1st Dist. No. C–970419, 1998 WL 107655.

5. *Livingston v. Diocese of Cleveland* (1998), 126 Ohio App.3d 299, 314, 710 N.E.2d 330.

6. Id. at 315, 710 N.E.2d 330.

7. Id., quoting *Cerney v. Norfolk & W. Ry. Co.* (1995), 104 Ohio App.3d 482, 488, 662 N.E.2d 827.

misleading factual misrepresentations. We do not presume to determine whether these statements were in fact factual misrepresentations; our decision is solely based on the sufficiency of the allegations in Doe's complaint.

{¶ 12} The Archdiocese further argues that even if these allegations are factual, they are insufficient to warrant the application of equitable estoppel. For support, the Archdiocese relies on *Livingston v. Diocese of Cleveland*,[8] a case involving sexual-abuse claims brought against the Diocese of Cleveland. The *Livingston* court held that statements telling the victims not to reveal the abuse they had suffered were insufficient to meet the first two elements of equitable estoppel.[9] But *Livingston* is distinguishable from the case at bar. Doe has alleged not only that she was intimidated into never revealing the identity of her baby's father, but also that she was told that she alone was responsible for her pregnancy and that her child would not be baptized if she did not place it for adoption. These allegations, taken together, are sufficient assertions of fraud and misrepresentation.

{¶ 13} Doe has also successfully alleged that her reliance on the Archdiocese's misrepresentations was reasonable and in good faith. Doe was raised in a devout Catholic home; she attended Catholic schools, participated in her parish's youth group, and regularly attended Mass. Doe's upbringing, coupled with the intimidation she experienced while pregnant, led her to believe the Archdiocese's statements. Given the religious indoctrination that Doe had experienced, her reliance was both reasonable and in good faith.

{¶ 14} Doe's complaint further adequately alleges that she suffered detriment as a result of the Archdiocese's misrepresentations. Doe underwent psychotherapy and hospitalization for mental anguish; she has additionally suffered from the loss of a relationship with her daughter. We conclude that Doe has sufficiently alleged the necessary elements of equitable estoppel.

{¶ 15} But, as we have already noted, when a party relies on equitable estoppel in a statute-of-limitations context, it must additionally show some statement or conduct by the defendant that in essence encouraged the party not to bring suit. In the present case, the Archdiocese made no express statements to Doe regarding the length of time she had to bring a claim against it. Nor did the Archdiocese make any attempt or offer to settle Doe's potential claims. Because the Archdiocese made no direct or express statements, to establish equitable estoppel Doe must have alleged that the Archdiocese utilized "similar misrepresentations or conduct" to prevent her from filing suit.

---

8. 126 Ohio App.3d 299, 710 N.E.2d 330.

9. Id. at 315, 710 N.E.2d 330.

{¶ 16} Doe's complaint asserts that the statements made to her by various representatives of the Archdiocese were "made with the sole purpose and intent to coerce Ms. Doe to forgo the best legal interests of her and of her child." [10]   It further alleges that the conduct of, and the actions taken by, the Archdiocese "were calculated to, and resulted in, Ms. Doe's relinquishment of her parental rights and the forbearance from any legal action." [11]   After reviewing Doe's complaint, we conclude that these statements adequately allege that the Archdiocese's conduct was motivated by a desire to prevent Doe from bringing suit. Again, we emphasize that we pass no judgment as to whether the Archdiocese was actually motivated by such a desire; rather, our conclusion is based on the well-pleaded allegations in Doe's complaint.

{¶ 17} In summary, we conclude that Doe has successfully alleged the necessary elements of the defense of equitable estoppel.

## IV.  Religious Entanglement

{¶ 18} The Archdiocese argues that should this court hold the defense of equitable estoppel to be applicable, we should nonetheless affirm the dismissal of Doe's claims because a trial court cannot determine their validity without infringing on the First Amendment guarantee of religious freedom.  According to the Archdiocese, this case cannot be decided without a court assessing the legitimacy of many of the Catholic Church's beliefs, including those on baptism and sin.

{¶ 19} A court's inquiry into religious doctrine is limited.  "The First Amendment to the United States Constitution, through the Fourteenth Amendment, prohibits state courts from making any inquiry into religious doctrine, practice or policy." [12]   But a court is not prohibited from determining whether a religious institution's proffered reason for its action is a mere pretext for a secular purpose. [13]

{¶ 20} Doe urges this court to conclude that the Archdiocese's actions were in fact motivated by a secular purpose and that its reliance on the church's religious beliefs to justify its actions was solely a pretext.  Although Doe's complaint does not expressly contain such an allegation, we believe that it can reasonably be inferred.

---

10.  Complaint, ¶ 20.

11.  Complaint, ¶ 25.

12.  *State ex rel. First New Shiloh Baptist Church v. Meager* (Apr. 16, 1997), 1st Dist. No. C–960371, 1997 WL 180266.

13.  See *Basinger v. Pilarczyk* (1997), 125 Ohio App.3d 74, 75, 707 N.E.2d 1149.

{¶ 21} The complaint alleges that Doe was coerced into giving up her child to protect Father Heil and the Church, that Father Heil told Doe he would be unable to remain a priest if the Church had to pay for 18 years of child support, and that the Archdiocese representatives were acting with the Church's pecuniary interests in mind. Considering these allegations to be true, and making all reasonable inferences in favor of Doe, we conclude that Doe's complaint sufficiently alleges that the Archdiocese's actions were motivated by a secular purpose.

## V. Sufficiency of the Individual Claims

{¶ 22} The Archdiocese further argues that several of Doe's claims must fail as a matter of law because her complaint does not state claims upon which relief can be granted. The Archdiocese takes issue with Doe's claims of negligent infliction of emotional distress, loss of filial consortium, and negligent supervision and retention. We address each claim in turn.

### A. Negligent Infliction of Emotional Distress

{¶ 23} A claim of negligent infliction of emotional distress occurs when "the plaintiff has either witnessed or experienced a dangerous accident or appreciated the actual physical peril."[14] This district has further held that the tort requires a bystander or witness to be traumatized by the emotionally distressing occurrence of a sudden, negligently caused event.[15]

{¶ 24} Doe did not experience a dangerous accident or physical peril resulting from such an accident. Nor did she witness a sudden, negligently caused event. Rather, Doe alleges that her trauma resulted from continuous and intentional pressure and intimidation over a lengthy period of time. The allegations in Doe's complaint cannot sustain a claim of negligent infliction of emotional distress. We note that it is of no importance that Doe did not suffer physical harm. Severe emotional injuries will suffice for a claim of negligent infliction of emotional distress.[16] But Doe's claim must fail because she neither experienced nor witnessed a sudden traumatizing event or accident.[17] We conclude as a matter of law that Doe's claim for negligent infliction of emotion distress was properly dismissed.

---

14. *Bunger v. Lawson Co.* (1998), 82 Ohio St.3d 463, 466, 696 N.E.2d 1029.

15. *Brose v. Bartlemay* (Apr. 16, 1997), 1st Dist. No. C–960423, 1997 WL 180287.

16. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, paragraph three of the syllabus.

17. See *Heiner v. Moretuzzo* (1995), 73 Ohio St.3d 80, 652 N.E.2d 664.

## B. Loss of Filial Consortium

{¶ 25} The Ohio Supreme Court first recognized the tort of loss of filial consortium in *Gallimore v. Children's Hosp. Med. Ctr.*[18] The court held that "a parent may recover damages, in a derivative action against a third-party tortfeasor who intentionally or negligently causes physical injury to the parent's minor child, for loss of filial consortium." [19]

{¶ 26} The facts alleged in Doe's complaint do not support this cause of action. Loss of filial consortium requires the child to experience some type of physical injury. Doe has made no allegation that her child experienced any type of physical injury, and we accordingly conclude that her claim for loss of filial consortium was properly dismissed.

## C. Negligent Supervision and Retention

{¶ 27} To prevail on a claim for negligent supervision and retention, a plaintiff must show the following: "(1) the existence of an employment relationship;  (2) the employee's incompetence;  (3) the employer's actual or constructive knowledge of such incompetence;  (4) the employee's act or omission causing the plaintiff's injuries;  and (5) the employer's negligence in * * * retaining the employee as the proximate cause of plaintiff's injury." [20]  A plaintiff must also show that the employee's act was reasonably foreseeable.[21]  An act is reasonably foreseeable if the employer knew or should have known of the employee's "propensity to engage in similar criminal, tortious, or dangerous conduct." [22]

{¶ 28} In essence, this tort requires the plaintiff to suffer an injury at the hands of an employee, after an employer has discovered the employee's incompetence and continued to maintain his employment. Doe's complaint does not support this cause of action. She does allege that the Archdiocese was aware that its employees were coercing and intimidating her. But she makes no allegations that the employees had engaged in similar behavior in the past or that the Archdiocese had maintained their employment after becoming aware of such conduct. The complaint does not allege that the behavior of the Archdiocese

---

18. (1993), 67 Ohio St.3d 244, 617 N.E.2d 1052.

19. Id. at 251, 617 N.E.2d 1052.

20. *Steppe v. Kmart Stores* (1999), 136 Ohio App.3d 454, 465, 737 N.E.2d 58.

21. *Wagoner v. United Dairy Farmers, Inc.* (Nov. 17, 2000), 1st Dist. No. C–990767, 2000 WL 1714252.

22. Id.

employees was reasonably foreseeable before it occurred. We conclude that Doe's claim for negligent supervision and retention was properly dismissed.

## VI. Conclusion

{¶ 29} Because Doe's complaint sufficiently alleges the necessary elements of equitable estoppel, we conclude that the trial court erred in dismissing her claims based upon the statute of limitations. And because Doe has also adequately asserted that the Archdiocese's actions were motivated by a secular purpose, we conclude that her complaint could not be dismissed on First Amendment grounds. However, regarding Doe's claims of negligent infliction of emotional distress, loss of filial consortium, and negligent supervision and retention, we hold that Doe's complaint fails to state claims upon which relief can be granted.

{¶ 30} We thus affirm the dismissal of Doe's claims for negligent infliction of emotional distress, loss of filial consortium, and negligent supervision and retention. But we reverse the trial court's dismissal of Doe's claims for intentional infliction of emotional distress, tortious interference with familial relationships, and breach of fiduciary duty, and we remand this cause for further proceedings in accordance with law.

Judgment accordingly.

HILDEBRANDT, P.J., and DOAN, J., concur.