WILLIE WILLIAMS, individually and as administrator, & others[1]
vs. WESTOVER FINISHING COMPANY, INC. & another.[2]

Hampden. November 17, 1986. — April 14, 1987.

Present: ARMSTRONG, PERRETTA, & SMITH, JJ.

*Workmen's Compensation Act,* Identity of employer. *Practice, Civil,*
Instructions to jury.

At the trial of claims arising from an accident suffered by a decedent at her
place of employment, where the principal issue was which of two cor-
porate defendants was the decedent's employer, evidence that the oper-
ations of the two defendants were very closely integrated and that the
line between them was not clear warranted the jury in finding, in response
to special questions, that the decedent had worked for both corporations
jointly and, as a consequence, both were immune from common law
liability under § 24 of G. L. c. 152, the Workmen's Compensation Act.
[60-61]

CIVIL ACTION commenced in the Superior Court on August
9, 1974.

The case was tried before *Lawrence B. Urbano,* J.

*Louis Kerlinsky* for the plaintiffs.

*Bart J. Gordon (Philip J. Tarpey, Jr.,* with him) for West-
over Finishing Co., Inc.

*John D. Ross, Jr.,* for Westover Knitting Mills, Inc.

ARMSTRONG, J. The plaintiffs, who are the husband and
children of the decedent, Bertha Williams, brought this action
to recover for damages for wrongful death, loss of consortium
and parental society, and (by the husband as administrator of
the decedent's estate) personal injuries. The decedent, in the
course of her employment on June 19, 1974, fell in a hole in
the basement floor of the building where she worked. This

---

[1] Vickie Williams, Willie E. Williams, Jr., and Anthony Lee Williams.

[2] Westover Knitting Mills, Inc.

resulted initially in a sprained ankle, and eventually in her death. The defendants, which will be referred to as "Finishing" and "Knitting," are two corporations that together occupied the building where the decedent was employed. (Hodges Carpet Company owned the building and had leased most of it to Finishing. The plaintiffs' claim against Hodges was settled prior to trial.) Because the workmen's compensation statute barred maintaining causes of action for personal injury or wrongful death against an employer, the principal issue at the trial was the identity of the decedent's employer.

The underlying facts (as opposed to the conclusions to be drawn therefrom) were mostly uncontested. Finishing and Knitting were sibling corporations, with the same officers, directors, and shareholders. Knitting made cloth. Finishing dyed cloth, dried it, applied wash-and-wear chemicals, and ironed it. Knitting used the upper part of the building in question, and Finishing used the lower part. The corporate division had originated because the two operations had different customers and was now maintained to take advantage of a lower workmen's compensation insurance rate applicable to Knitting employees. The Finishing supervisors were carried on the Knitting payroll, and their wages were billed back to Finishing.

The decedent had worked in various parts of the building. At the time of her injury, she had been working in the basement on a dryer. Drying was part of Finishing's operations, and only Finishing used the basement. The decedent believed she worked for Knitting and had been paid by it in 1972 and 1973. On the other hand, she was paid by Finishing in 1974, and her supervisor believed that she worked for Finishing. Her workmen's compensation claim form showed her as a Knitting employee, but the "Employer's First Report of Injury," filed after her accident, showed her as a Finishing employee.

On these facts, the plaintiffs contended that the decedent was an employee of either Knitting or Finishing (their counsel did not elect between theories at trial), but not both, and therefore the other company did not enjoy the employer's statutory immunity from common-law actions under G. L. c. 152, § 24. The jury were asked, on special questions, whether the decedent

worked for Knitting and whether she worked for Finishing. They found that she worked for both. The plaintiffs objected to this finding as contrary to the evidence. The objection was overruled, and verdicts were directed for the defendants on all counts except for loss of consortium and parental society.[3]

The plaintiffs' argument at trial was narrow. They conceded that multiple employment is theoretically possible. They expressly declined to be pinned down into saying that a finding that the decedent worked for Knitting, or that she worked for Finishing, was unwarranted by the evidence.[4] They merely contended that, even though the jury could find the decedent worked for either of the two companies, the jury could not find that she worked for both on these facts. We disagree with this contention. Joint employment, where a person under the simultaneous control of two employers simultaneously performs services for both, is a well recognized phenomenon, as distinguished from dual employment, where an employee performs services for each of two employers separately and the services for the two employers are unrelated. See 1C Larson, Workmen's Compensation §§ 48.41-48.42 (1986). The operations of the two companies were very closely integrated, and the line between them was not clear. In similarly dubious cases other courts have upheld findings that an employee was jointly employed by two employers at once. *Dillaha Fruit Co.* v. *LaTourrette*, 262 Ark. 434 (1977). *Richard* v. *United States Fid. & Guar. Co.*, 247 La. 943 (1965). *Del Peso* v. *H. A. Bar & Restaurant Co.*, 75 N.J. Super. 108 (N.J. Super. Ct. App.

---

[3] Since this action arose before the effective date of St. 1985, c. 572, § 35, which rewrote G. L. c. 152, § 24, these claims were not completely barred under the workmen's compensation statute. The plaintiffs could and did recover for loss of the decedent's consortium and parental society prior to her death, under *Ferriter* v. *Daniel O'Connell's Sons*, 381 Mass. 507, 529-530 (1980). But they could not recover for loss of consortium and parental society after the decedent's death. *Ferriter, supra* at 526-527. See also *McDonnell* v. *Berkshire Street Ry. Co.*, 243 Mass. 94 (1922); *Pierce's Case*, 267 Mass. 208, 211 (1929); *Hallett* v. *Wrentham*, 398 Mass. 550, 555-556 (1986) (decided after this case was briefed).

[4] When queried about the point, counsel for the plaintiffs replied, "I'm riding two horses."

Div. 1962). Larson, *supra,* notes that courts are showing an increasing tendency to recognize joint employment where it exists, instead of arbitrarily assigning the employee to one or the other employer. The jury could properly have found that the decedent worked for both companies at once.

The plaintiffs contend that the judge erred in denying two of their ninety-six requested jury instructions. One concerned the necessity of an employee's consent to a change of employers. They contend on appeal that the decedent was an employee of only Knitting in 1972 and 1973, that she never could have become an employee of Finishing without her consent, and that the jury should have been so instructed. First, the plaintiffs are making an assumption which the evidence does not require. Both defendants admitted that the decedent was an employee of Knitting in 1972 and 1973, but they were never asked whether she was an employee of Knitting exclusively in those years. The jury could properly have found that she had always been a joint employee. Second, consent to a change of employers can be implied. *Keaney's Case,* 341 Mass. 571, 574 (1960). In the cases where consent has been at issue, the employee usually has been lent for only a few days, to erect a machine being bought by the employer, or temporarily to operate a machine sold by the employer. See, e.g., the *Keaney* case cited above, as well as *Bowie* v. *Coffin Valve Co.,* 200 Mass. 571, 578 (1909); *Sprague* v. *General Elec. Co.,* 213 Mass. 375 (1913); *Abbott* v. *Link-Belt Co.,* 324 Mass. 673 (1949); and *Sargentelli's Case,* 331 Mass. 193 (1954). In this case, however, the decedent's work for Finishing was of permanent character, and her consent to the arrangement was not a contested issue at the trial. She had worked in the Finishing area of the building for at least one year, without protest. She accepted at least four paychecks from Finishing without complaint. Her 1974 W-2 form showed Finishing as her employer. In the face of this evidence, there was no attempt to show that she objected to a possible change of employers, or (unlike *Brooks's Case,* 338 Mass. 692 [1959]) that she was unaware that two employers existed. Thus, the judge's failure to give an instruction on consent was not prejudicial error.

This result is not inconsistent with our earlier decision in *Searcy* v. *Paul*, 20 Mass. App. Ct. 134 (1985). That case held that parent and subsidiary companies may not deny their separate identities in order to avoid common-law liability of the parent to an employee of the subsidiary. Here, Knitting and Finishing are not attempting to deny their legal separateness. Nothing in *Searcy* prevents the decedent from being actually employed by two corporations at once.[5]

The plaintiffs further object to the judge's instructions on the definition of employer. They requested an instruction that "[t]he test of the relation is the location of the power of control." The judge charged the jury: "What are the indicia . . . to determine whether or not there is an employer-employee relationship? One is called control. Who controls or directs the work of the employee? . . . Because the matter of control is a principal function of the employer. It's a primary sign of employer-employee relationships. Another is who paid her? Not conclusive, but another indici[um] of who the employer is . . . . For whom did an employee think he or she worked? Obviously, that is an indici[um] . . . . For whom was the work employed? . . . These tests . . . are not necessarily clear and distinct, and usually, in and of themselves, are not conclusive."

After the charge, the plaintiffs complained that the judge had not given their requested instruction (no. 95) on the test of the employment relationship. Since the judge was not obliged to use their choice of language, this was an insufficient objection. The judge's remarks indicate he thought he had conveyed the substance of the requested instruction. If in fact his instruc-

---

[5] Nor is the decision in the present case inconsistent with St. 1971, c. 941, discussed in the *Searcy* case at 138-139. The text of that statute (it amended G. L. c. 152, § 15) was specifically tailored to abolish the judicially enacted "common employment" doctrine, see Locke, Workmen's Compensation § 665 (2d ed. 1981), and thus to permit an injured employee to bring suit against legally liable employers other than his own. The purpose was not to make it legally impossible for an employee to stand in that relation to two employers simultaneously. Indeed, G. L. c. 152, § 26B, expressly contemplates multiple employers and provides that insurers would be jointly and severally liable to an employee injured while performing services common to the two employers.

tion tended to confuse the ultimate issue of control with the factors indicative of control, the plaintiffs had the burden of alerting the judge to the defect with more clarity than they did. See *Narkin* v. *Springfield*, 5 Mass. App. Ct. 489, 491 (1977). The error was harmless in any event; on the evidence in this particular case, rephrasing the instruction more precisely in terms of control would not have pointed the jury more strongly in the direction of finding a single employer than the instruction as given.

*Judgments affirmed.*