McHugh, J.
“[The] party who moves for summary judgment has the burden of initially showing that there is an absence of evidence to support the case of a nonmoving party shouldering the burden of proof at trial.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). Accord Smith v. Massimiano, 414 Mass. 81, 85-86 (1993). Moreover, “[a] toehold ... is enough to survive a motion for summary judgment.” *604 Marr Equipment Corp. v. I.T.O. Corporation of New England, 14 Mass.App.Ct. 231, 235 (1982). The record, of course, must be construed in the light most favorable to the nonmoving party. E.g., McDonough v. Marr Scaffolding Co., 412 Mass. 636, 638 (1992).
Here, plaintiffs claim that the defendant doctor, Camran Adly, was an employee of Cambridge Psychiatric Associates, Inc. (“CPA”) and that the latter thus is responsible for Dr. Adly’s allegedly negligent failure to write admitting orders for plaintiff, Renee Haimovici, that specified precautions necessary and appropriate to prevent her attempts at suicide.
Although the parties have proceeded as if Dr. Adly was either an independent contractor or an employee either of Newton-Wellesley Hospital (“the Hospital”) or CPA, the choices are not so limited. Nothing in law of logic necessarily precludes a conclusion that Dr. Adly was an employee both of CPA and of the Hospital.
Ultimately, the question of employee status comes in this case, as it does in most cases, to the question of whether the putative employer had a right to control doctor’s performance of his work. Kelley v. Rossi, 395 Mass. 659, 661, 664 (1985); Chase v. Independent Practice Association, Inc., 31 Mass.App.Ct. 661, 665 (1991). The appropriate inquiry focuses not on some general or theoretical right to control the putative employee’s work but on a right to control the specific activity the plaintiff contends the employee carried out in a negligent fashion thereby causing the injury at issue. St. Germaine v. Pendergast, 411 Mass. 615, 622-23 & n.11 (1992); Corsetti v. Stone Co., 396 Mass. 1, 10-11 (1985).
Here, the contract between CPA and the Hospital required CPA to supply emergency psychiatrists to the Hospital. There is substantial evidence in the record that physicians CPA supplied to the Hospital were to operate under the Hospital’s control. For example, all physicians CPA supplied had to be properly credentialed at the Hospital, had to be acceptable to the chief of psychiatry at the Hospital, had to undergo an orientation program at the Hospital, had to practice under the by-laws of the Hospital, and had to follow guidelines in the Hospital’s manual for on-call psychiatrists.
At the same time, however, there is substantial evidence that Dr. Adly, a resident who worked on a fee-for-service basis part-time and who was under contract to other hospitals as well, was required by his contract with CPA to “become familiar with (the) Hospital’s information booklet for on-call psychiatrists,” and to
evaluate and arrange appropriate disposition for all psychiatric patients in the Emergency Department, including those left over from the day time team. Emergency Department write-ups should include salient features of the history and mental status and focus on the disposition, including follow-up recommendations.[1]
CPA retained the right to evaluate Dr. Adly’s performance and to terminate Dr. Adly for “unsatisfactory clinical performance” or otherwise failing to carry out his duties in a satisfactory manner.
In light of the foregoing, I am of the opinion that the fact-finder could conclude that a failure by Dr. Adly to carry out his duties and responsibilities in accordance with applicable Hospital regulations was a violation of his contract with CPA for which CPA had the contractual power to impose appropriate sanctions. A factfin-der could also conclude that CPA had the power to enforce Dr. Adly’s contractual obligations, including his contractual obligation to become familiar with and follow Hospital policies, through supervisory means less drastic than discharge.
Under all of the foregoing circumstances, I am of the opinion that the finder of fact could conclude that Dr. Adly was an employee both of CPA and of the Hospital at the time he provided services to Ms. Haimovici. See e.g., Williams v. Westover Finishing Co., 24 Mass.App.Ct. 58, 60 (1987). At the very least, this case, like most dealing with the question of the employer’s identity, presents a question of fact for the jury. See generally, Corsetti v. Stone Co., supra, 396 Mass. at 11.[2]

 That is almost exactly what the Hospital’s manual for on-call psychiatrists required.

 Accordingly, those portions of Dr. Becker’s testimony referred to in CPA’s supplemental memorandum, while pointing toward the Hospital’s status as an employer, do not necessarily show that CPA was not an employer or otherwise remove the genuine issues of material fact the record contains.