## Leo Whitman's Case.

No. 10-P-71.

Suffolk. October 5, 2010. - September 6, 2011.

Present: Trainor, Meade, & Sikora, JJ.

*Workers' Compensation Act,* Findings by administrative judge, Judicial review, Independent contractor, To whom act applies. *Administrative Law,* Judicial review.

Statement of the standard of review applicable to a summary affirmance by the Industrial Accident Reviewing Board of a decision of an administrative judge of the Department of Industrial Accidents. [352]

An administrative judge of the Department of Industrial Accidents, in determining that a claimant was an employee at the time of his injury, did not err in applying the criteria distinguishing an independent contractor from an employee [352-353]; further, the evidence and the administrative judge's findings supported his conclusion that the claimant was a joint employee of two employers [354], a conclusion that was not arbitrary, capricious, or an abuse of discretion, given that both entities controlled the assignment of the claimant's work and were receiving the benefit of it at the time and place of his injury [354-356].

Appeal from a decision of the Industrial Accident Reviewing Board.

*Charles F. Rodman* for Pace Properties Management, LLC.

*Sarah F. Jubinville* for the claimant.

Sikora, J. This appeal presents two issues of coverage under the workers' compensation scheme. The first is the familiar question whether the claimant was an independent contractor or an employee at the time of his injury. The second is the unfamiliar question whether he was working jointly for two employers at the time of his injury so as to impose statutory financial liabilities upon each of them. By thorough findings and reasoning after an evidentiary hearing, an administrative judge of the Department of Industrial Accidents (department) concluded that the claimant was a covered employee of both entities. The

reviewing board of the department (board) summarily affirmed. For the following reasons, we now affirm.

*Background.* We summarize the material facts included in the subsidiary findings of the administrative judge. They receive ample support from the evidence. We add several points of uncontested evidence from the hearing conducted in accordance with G. L. c. 152, § 11.

The claimant, Leo Whitman, was an experienced construction worker particularly skilled in drywall installation. In February of 2003, at the age of twenty-eight, he began his own business under the name of Creative Drywall Systems (Creative Drywall) and began to solicit work. Creative Drywall attracted little business throughout the ensuing year. In late 2003, a plasterer introduced Whitman to Stephen Sarcia and John Citrano, who were engaged in the purchase, rehabilitation, and resale of distressed residential properties. Citrano hired Whitman to perform some construction work on his home. Sarcia and Citrano then engaged Whitman in early 2004 to work on one of their projects: the conversion of a mill structure in Lynn to condominium units. Whitman worked on that site for about ten months, at the rate of $250 per day for five to seven days per week. Sarcia and Citrano set Whitman's day-to-day assignments and paid him weekly by checks addressed to him individually. The payments were his sole income. Whitman did not submit a bid or sign a contract related to his work on the mill conversion.

During the course of the mill project, Sarcia and Citrano introduced Whitman to Anthony Pace, the owner of Pace Properties Management, LLC (PPM), a company also engaged in the purchase, redevelopment, and sale of distressed properties as condominium residences. At the conclusion of the mill project, Whitman began work at an adjacent job site owned by PPM. The working terms were the same. Whitman received $250 per day, worked five to six days per week under daily assignments from Pace, and received weekly checks payable to him individually. PPM furnished all materials to Whitman. The work involved no bidding or contracts, lasted for five months, and generated Whitman's entire income for that period.

Thereafter Whitman continued to receive work from Sarcia and Citrano, whom he regarded as partners, and from PPM.

Whitman viewed them collectively as "a group" with which he was "locked in" by reason of their continuous supply of full-time work for him. He no longer solicited work for Creative Drywall.[1]

Throughout 2004 and 2005, Whitman worked for Sarcia and Citrano or PPM at ten different sites. During occasional lulls between projects, Sarcia, Citrano, or Pace would provide Whitman with work at their homes. During that period, Whitman completed only one separate short-term side job for which Citrano recommended him. Whitman's working terms remained constant: activity for five or more days per week at the rate of $250 per day, with overtime compensation for longer hours and additional days, and weekly payment by checks drawn to him individually predominantly from real estate company accounts and delivered to him by Sarcia, Citrano, or Pace. In 2005, Sarcia and in 2006 Pace delivered a monetary Christmas bonus to him. After January, 2007, PPM sent Whitman an Internal Revenue Service (IRS) form 1099 as record of his compensation for the 2006 calendar year.

While Whitman's primary work consisted of drywalling, it included also the installation of doors, cabinetry, baseboards, and tiling, and miscellaneous additional labor. Sarcia, Pace, and Citrano continued to furnish all materials and supplies. Whitman used his own tools, with the exception of some large or expensive equipment. He continued without bids or contracts and submitted no invoices. Sarcia, Pace, or Citrano did not direct Whitman in the detailed performance of his skilled work; they did assign him to specific daily and weekly segments of work.

In late 2006, Whitman began work on a building in Ipswich which PPM had contracted to purchase. The seller had permitted Sarcia and PPM to undertake alterations before the closing. Sarcia and PPM planned to divide the building into two condominium units; each would own one. One of Whitman's immediate tasks was to erect the demising wall between the intended units. On December 20, 2006, the collapse of a scaffold caused Whitman to fall from a height of about fourteen to

---

[1]In Whitman's words, "So I pretty much just gave up hope on Creative Drywall because I was under the understanding that I was locked in with these individuals and they told me they had enough work to keep me busy."

sixteen feet. He suffered serious fractures of the tibia and fibula of his left leg, and underwent two surgeries and the implantation of two plates and multiple orthopedic screws. He was totally incapacitated for three months, and has been partially disabled ever since. His limitation to sedentary work has reduced his weekly earning capacity from $1,300 to $400.

Whitman brought his claim for benefits as an employee of Sarcia and or PPM. Neither had maintained statutory coverage for him; they characterized him as an independent contractor. The evidentiary hearing before the administrative judge included the testimony of Whitman, Pace, Sarcia, and Citrano. The administrative judge concluded that Whitman had worked as an employee of PPM and Sarcia, even though Pace and Sarcia had in subjective good faith regarded him as an independent contractor; and that PPM and Sarcia had constituted a "consortium of employers," each of whom had an employer's statutory responsibilities.[2]

The administrative judge ordered the Massachusetts Workers' Compensation Trust Fund (trust fund) to pay Whitman temporary total disability compensation for the three months immediately after the accident pursuant to G. L. c. 152, § 34; to pay him partial disability compensation from that point onward pursuant to § 35; to pay for all reasonable and necessary related medical treatment pursuant to §§ 13 and 30; and to pay the fee and reasonable expenses of Whitman's counsel pursuant to § 13A(5). The payments by the trust fund expose the uninsured employers to recovery by the trust fund of all such expenditures and its necessary and reasonable attorney's fees. G. L. c. 152, § 65(8). Pursuant to G. L. c. 152, § 12(2), only PPM has appealed from the board's summary affirmance of the orders of the administrative judge.

*Analysis.* PPM challenges both determinations of the administrative judge. It contends that, as an error of law, he misapplied the criteria distinguishing an independent contractor from an employee; and that his treatment of PPM and Sarcia as joint employers lacked the support of requisite findings and comprised a conclusion arbitrary, capricious, and abusive of discretion.

---

[2]The administrative judge attributed honest and credible testimony to Pace, Sarcia, and Citrano.

1. *Standard of review.* In cases of summary affirmance of a decision of the administrative judge by the board, the reviewing court is examining the findings and reasoning of the administrative judge. See *Ballard's Case,* 13 Mass. App. Ct. 1068, 1068 (1982); *Coggin* v. *Massachusetts Parole Bd.,* 42 Mass. App. Ct. 584, 587 (1997), and cases cited. In accordance with G. L. c. 152, § 12(2), we review the decision under the standards of the Massachusetts Administrative Procedure Act, G. L. c. 30A, § 14(7)(*a*) through (*d*), (*f*), and (*g*). In this instance PPM argues in effect that the characterization of Whitman as an employee amounts to an error of law within the meaning of G. L. c. 30A, § 14(7)(*c*); and that the determination of PPM as a joint employer rests upon inadequate findings and therefore unlawful procedure in violation of § 14(7)(*d*) and, further, constitutes action arbitrary, capricious, or abusive of discretion within the meaning of § 14(7)(*g*). Review is deferential. "The court shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14(7), as appearing in St. 1973, c. 1114, § 3.

2. *Employee status.* PPM insists that the administrative judge undervalued the criterion of control over the work performed at job sites by Whitman. It emphasizes that Whitman "was a career drywalling professional who specialized in drywalling, had a professional drywalling business . . . , had been a drywaller for several years, and, by his own admission, knew that PPM was relying on his expertise on projects for which he was hired and that he enjoyed wide discretion in determining how to do his job."

The administrative judge acknowledged Whitman's skill and his freedom from over-the-shoulder supervision by PPM and Sarcia in the performance of his work. At the same time he conducted a far wider ranging evaluation of Whitman's status under the multiple criteria drawn from Massachusetts decisional law and the Restatement (Second) of Agency § 220(2) (1958) and typically employed in the department's administrative adjudications. See *MacTavish* v. *O'Connor Lumber Co.,* 6 Mass. Workers' Comp. Rep. 174, 177 (1992). The administrative judge

applied twelve such criteria to the largely undisputed evidence. We summarize them in the margin.[3]

In the calculus of the administrative judge, seven criteria favored independent contractor status and five an employment relationship. However he assigned greater weight to the indicia supporting employee status, especially the duration, continuity, near exclusivity of the working relationship, the absence of any contract and the resulting exposure of Whitman to at-will termination, and the payments to him as an individual. The question of employment status within the meaning of G. L. c. 152, § 1(4), "is essentially a question of fact for the board, not to be set aside if it is justified by the evidence, unless, of course, it is tainted by some error of law." *Madariaga's Case*, 19 Mass. App. Ct. 477, 481 (1985). Here the administrative judge's careful, multifactorial assessment shows no error of law.[4]

---

[3]The administrative judge applied the following twelve criteria: (1) the extent of control exercised by the employer over the details of the work (supported independent contractor status); (2) whether the worker was engaged in a distinct occupation or business (supported independent contractor status); (3) whether, in the locality, the type of work usually proceeded under the direction of an employer or by an unsupervised specialist (supported independent contractor status); (4) the skill required for the occupation (supported independent contractor status); (5) whether the employer or the worker supplied the tools and place of work (on balance, supported independent contractor status); (6) the length of time of the working relationship (supported employee status); (7) the method of payment (supported employee status); (8) whether the work was part of the regular business of the employer (supported employee status); (9) whether the parties believed that they were creating an employment relationship (Whitman's belief of his "locked in" posture supported employment status against Pace's contrary belief); (10) whether the alleged employer constituted a business (supported employee status); (11) the tax treatment applied to payment (use of form 1099 favored independent contractor status); and (12) the presence of the right to terminate the relationship without liability, as opposed to the worker's right to complete the project for which he was hired (supported employee status).

The administrative judge derived criteria one through ten from *MacTavish* v. *O'Connor Lumber Co.*, *supra*, which had assimilated them from the Restatement (Second) of Agency § 220(2). He applied factor eleven independently and drew factor twelve from *Madariaga's Case*, 19 Mass. App. Ct. 477, 481 (1985). For an analogous survey of criteria, see Nason, Koziol and Wall, Workers' Compensation §§ 8.1 through 8.09 (3d ed. 2003 & 2010-2011 supp.).

[4]PPM's precise contention is that the administrative judge should have given his favoring treatment of the criterion of supervisory control overriding weight. No precedent commands that result. If anything, however, that treat-

3. *Joint employment.* PPM's remaining argument suggests that Whitman was not a joint employee of both Sarcia and PPM. It attacks the administrative judge's determination of jointness upon two grounds, one procedural and the other substantive. The procedural contention is that the administrative judge summarily made an ultimate finding that PPM, Pace, Sarcia, and Citrano comprised "a consortium for which [Whitman] worked exclusively during the two years prior to his industrial injury" without necessary subsidiary findings and reasoning in violation of G. L. c. 30A, § 11(8),[5] and thereby upon unlawful procedure within the meaning of G. L. c. 30A, § 14(7)(*d*).

While the administrative judge applied the bulk of his decision to the issue of employee status, the evidence and his findings additionally support his identification of a consortium of employers jointly engaging the labor of Whitman. His subsidiary findings included the facts that Whitman had suffered his injury at the job site planned for purchase by PPM and Sarcia; that PPM and Sarcia were sharing the expenses of the rehabilitation of the structure; and that PPM and Sarcia each would own a designated half of the completed renovation. He found specifically that "Pace, Sarcia and Citran[o] worked cooperatively throughout the claimant's tenure" of two or more years of assigned work. As a matter of form required by § 11(8) and § 14(7)(*d*), the administrative judge's conclusion rests upon adequately stated findings and reasoning.

The substantive contention is that the determination of joint employment is arbitrary, capricious, or abusive of discretion, within the sense of G. L. c. 30A, § 14(7)(*g*), because the evidence could not support the necessary findings that PPM and Sarcia operated as a single employer with common management, ownership, and financial controls. This case appears to

---

ment may already have been overly generous to PPM. Not actual supervisory control of the worker's performance, but rather the "right to control" is decisive. *McDermott's Case,* 283 Mass. 74, 76 (1933). If the worker is subject to "a right to designate the work to be done under the contract . . . then he is a servant or employee." *Ibid.* It was undisputed that Pace and Sarcia always "designated" the assignments of Whitman's work at each project.

[5]General Laws c. 30A, § 11(8), inserted by St. 1954, c. 681, § 1, requires in pertinent part that an agency decision "shall be accompanied by a statement of reasons for the decision, including determination of each issue of fact or law necessary to the decision."

present the first appellate occasion for a determination of joint employers' responsibility under the workers' compensation program in Massachusetts. For the following reasons we conclude that the administrative judge ruled correctly as a matter of law and sound discretion.

No authority supports PPM's premise that joint employers must be integrated or "single" by ownership, management, and finances. Workers' compensation law in Massachusetts allows separate entities to constitute joint employers. General Laws c. 152, § 26B, inserted by St. 1957, c. 276, explicitly acknowledges a covered worker's employment "in the concurrent service of two or more insured employers" and the assignment of joint and several liability to their respective insurers for compensable injury incurred in work "common to such employers." In *Williams* v. *Westover Finishing Co.*, 24 Mass. App. Ct. 58, 59-62 (1987), this court held that the plaintiffs' decedent qualified as a worker jointly employed by two employers, and that the decedent's worker's compensation coverage provided both employers with immunity from liability in tort to her estate. Both employers, therefore, received the benefit of coverage. *Ibid.* In this instance, joint employment works consistently in the converse situation. Since Whitman worked jointly without coverage for two employers, both employers must bear the burden or detriment of noncoverage.

Here the evidence shows that PPM (through Pace) and Sarcia controlled the assignment of Whitman's work and were receiving the benefit of it at the time and place of his injury. The elements of shared control and benefit characterize joint employment. See *id.* at 60 ("Joint employment, where a person under the simultaneous control of two employers simultaneously performs services for both, is a well recognized phenomenon"); 3 Larson, Larson's Workers' Compensation Law §§ 68.01 & 68.03 (rev. ed. 2011). That relationship arises commonly "because there is nothing unusual about the coinciding of both control by two employers and the advancement of the interests of two employers in a single piece of work." *Id.* at § 68.01, at 68-2. The evidence established that PPM and Sarcia were undertaking the Ipswich project jointly.[6] In instances of symbiotic

---

[6]Their plan was to divide the building into two condominium units so that

business arrangements, the trend of courts is "to dispose of close cases, not by insisting on an all-or-nothing choice between two employers both bearing a close relation to the employee, but by finding a joint employment on the theory that the employee is continuously serving both employers under the control of both."[7] *Id.* at § 68.02, at 68-2.

*Conclusion.* We therefore affirm the decision of the board.

*So ordered.*

---

each could purchase one unit and then resell it. Their collaborative sharing of the expenses, implementation, and benefits of the project created a joint venture. See *Gurry* v. *Cumberland Farms, Inc.*, 406 Mass. 615, 623-624 (1990). "[J]oint employment may come about simply because of the joint character of the business arrangement between the two employers. The most obvious illustration is that of a classic joint venture." Larson's Workers' Compensation Law, *supra* at § 68.03, at 68-4.

[7]The wide majority of States have expressly acknowledged that multiple employers may be jointly liable for provision of workers' compensation benefits under their statutory programs if the employee was serving their interests at the time of injury. See, e.g., *Employer's Liab. Assurance Corp. of London, England* v. *Industrial Acc. Commn. of CA*, 177 P. 273 (Cal. 1918); *Doe* v. *Yale Univ.*, 252 Conn. 641, 674-675 (2000); *Hudson* v. *Industrial Commn.*, 387 Ill. 228, 239 (1944); *Wunschel* v. *Jersey City*, 96 N.J. 651, 663 (1984); *Smallwood* v. *Market Haulage, Inc.*, 42 A.D.2d 455, 456-457 (N.Y. 1973); *Lupo* v. *Nursery Originals, Inc.*, 400 A.2d 950, 951-952 (R.I. 1979) (concurrent employment).