**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0548n.06

No. 19-3054

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 29, 2019
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| ANTHONY HERNDON, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| CARLOS V. TORRES, et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | OPINION |
| | ) | |

---

Before: KETHLEDGE, BUSH, and NALBANDIAN, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** This appeal arises from road rage at a truck stop in northern Ohio. Carlos Torres attacked Anthony Herndon with a long metal rod, fracturing his femur and leaving him permanently disabled. Herndon brought suit against Torres and the company for which he worked, Avrora Express, Inc. Avrora is no longer in business, but Herndon hopes for recovery under Avrora's insurance. The district court held that, under the governing Ohio law, Torres was an independent contractor, rather than an employee, of Avrora, and therefore granted Avrora summary judgment on Herndon's claim that Avrora was vicariously liable for Torres's intentional tort. Also, the court granted Avrora summary judgment on Herndon's claims that Avrora was negligent in hiring, retaining, training, and supervising Torres, finding no evidence that Avrora had actual or constructive knowledge before the attack of any criminal or violent tendencies of Torres. We **AFFIRM**.

**I.**

The following facts are not in dispute. Avrora was a Massachusetts corporation that specialized in intracontinental automobile transport from the east coast to the west coast of the United States.[1] It was owned in equal shares by Ilya Khotsin and Dmitriy Salagornik. Avrora was formed in January 2012 as a subsidiary of another corporation, Vitaly's Auto Transportation, which was owned by Salagornik and his father. In late 2012, Salagornik dissolved Vitaly's and sold or leased all of its trucks to Avrora. Avrora operated a fleet of eight trucks, but employed no full-time drivers. Rather, Avrora contracted the delivery jobs out to part-time drivers who often worked for other transportation companies.

Torres began working for Vitaly's in early 2012, at which point he enrolled in a federal Department of Transportation (DOT) drug screening program, was drug tested, and represented to Vitaly's that he had no prior arrests or convictions. Vitaly's also engaged a third-party human resources firm to ensure that Torres was properly licensed and DOT-compliant in regards to his driving record. Torres began working for Avrora in late 2012 after he was transferred from Vitaly's. Avrora did not conduct new drug tests or any background check.

Torres intermittently hauled loads for Avrora from late 2012 to June 2014. According to Khotsin's description of the nature of the work relationship, Torres was free to accept or decline jobs as he saw fit, and he was paid on a job-by-job basis. Oftentimes during his trips, Avrora would contact Torres and ask him to make an additional pick-up. However, Torres had discretion

---

[1] Avrora filed Articles of Voluntary Dissolution with the Commonwealth of Massachusetts on February 3, 2017. Even though Avrora has dissolved its corporate status, this dispute still presents a genuine case or controversy under Article III. A case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (internal quotations omitted), *see also Walling v. James V. Reuter, Inc.*, 321 U.S. 671, 673–74 (1944) (holding that the dissolution of a corporate party does not render a case moot). Because Avrora maintained liability insurance, which Herndon alleges will provide coverage upon reversal of the district court's decision because the policy is still in effect, we can grant effectual relief with a decision in his favor.

to accept or decline the additional work as he saw fit. Also, in hauling cars across the country, Torres had discretion to select his own routes. Although Avrora might suggest routes for him to take, the final decision always rested with Torres.

When he accepted a job, Torres drove a truck that Avrora owned or leased, but he used his own cell phone to communicate with customers and his own tools to attach the cars to the trailer he hauled. He could accept jobs from other companies mid-trip, or he could leave the haul altogether, provided he found a replacement driver to return to Massachusetts. Further, Torres was free to manage all aspects of his hauls. Although Avrora provided him with the destination and a time frame for delivery, Torres decided the routes and the number of days he drove per week, and he was never required to check in with Avrora mid-trip. Federal regulations alone limited the number of hours he worked per day. For income tax purposes, Avrora provided Torres with an IRS form-1099.

Until the date of the attack, Torres's tenure at Avrora was uneventful and tame. Avrora's owners do not recall having any problems with Torres. For example, in April 2014, Torres and Khotsin embarked on a seven-day, almost non-stop journey from Massachusetts to California. Khotsin did not witness Torres exhibit any violent or criminal tendencies during their week in the truck. Further, Avrora received no reports of criminal, threatening, or violent behavior exhibited by Torres during or outside of his engagements with Avrora.

That changed in June 2014, when the violent attack at issue occurred. Torres was making a cross-country delivery from Massachusetts to San Francisco. In Perrysburg, Ohio, he encountered Herndon as the latter attempted to turn into a truck stop for refueling. When Herndon pulled into the left-hand lane, Torres suddenly merged his truck into the same lane, cutting Herndon off and causing him to swerve off the road onto the grass shoulder. Later, after the two

3

men had parked their trucks at the truck stop, Herndon remarked to Torres that he should be more careful driving. That comment set Torres off. He reached into his truck, grabbed a metal rod, and furiously beat Herndon. The attack left Herndon with a fractured femur and a permanent disability. Torres was arrested, pleaded guilty to attempted felonious assault, and spent a year in prison.

Herndon brought suit in the United States District Court for the Northern District of Ohio, seeking compensatory and punitive damages from both Torres and Avrora under theories of negligence and intentional torts. Thereafter, the parties agreed to entry of a consent judgment against Torres. The district court then entered summary judgment in favor of Avrora, holding that (1) Ohio, rather than Massachusetts, law applied; (2) Torres was an independent contractor of Avrora; and (3) Avora did not negligently hire, retain, train, or supervise Torres. Herndon filed a timely appeal.

"We review a district court's grant of summary judgment de novo." *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019) (internal quotations omitted). Summary judgment is appropriate if "no genuine dispute as to any material fact" exists and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). At the summary judgment stage, "the evidence is construed and all reasonable inferences are drawn in favor of the nonmoving party." *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013) (citing *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008)).

Herndon advances five arguments to reverse the district court's judgment, which we address in the following order: (1) that the district court erred in applying Ohio law, rather than

Massachusetts law; (2) that the district court erred in holding that Torres was an independent contractor, rather than an employee, of Avrora; (3) that Avrora is vicariously liable for Torres's intentional tort; (4) that Avrora was negligent in hiring Torres; and (5) that Avrora was negligent in training and supervising Torres. We consider the second and third arguments together because the question of whether Torres is an employee or independent contractor is dispositive of the issue of vicarious liability, and the fourth and fifth arguments together, as the claims of negligent hiring, training, and supervision all share some of the same elements, resolution of one of which disposes of both claims.

## II.

### A. Choice of Law

Herndon argues that the district court wrongly applied Ohio law, when Massachusetts law should govern. Resolution of this issue turns on the choice-of-law rules of the State where the district court sits, here, Ohio. *Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 361 (6th Cir. 1993) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 490 (1941)). However, before engaging in a choice-of-law analysis, Ohio law directs us first to determine if the laws of the States at issue actually conflict. *Akro-Plastics v. Drake Indus.*, 685 N.E.2d 246, 248 (Ohio Ct. App. 1996). If there is no conflict, then no choice-of-law determination is necessary and the substantive law of Ohio applies. *Cross v. Carnes*, 724 N.E.2d 828, 836 (Ohio Ct. App. 1998)).

The district court found that the general contours of Ohio and Massachusetts law are substantially the same, and Herndon has not identified any authority to suggest that the laws are in conflict. Furthermore, our own research has determined that they do not conflict. Under both Ohio and Massachusetts law, the test to determine whether one is an employee or independent contractor is whether the alleged employer had the right to control every manner of the individual's

5

work. *See State ex rel. Nese v. State Teachers Ret. Bd. of Ohio*, 991 N.E.2d 218, 225 (Ohio 2013); *Patterson v. Liberty Mut. Ins. Co.*, 723 N.E.2d 1005, 1010 n.13 (Mass. 2000) (quoting *McDermott's Case*, 186 N.E. 231 (Mass. 1933)). Both Ohio and Massachusetts have adopted the approach described in Restatement (Second) of Agency § 220(2), and the courts in both States apply the factors consistently. *See Duke v. Sanymetal Prods Co.*, 286 N.E.2d 324, 327 (Ohio Ct. App. 1972); *Case of Whitman*, 952 N.E.2d 983, 987 n.3 (Mass. Ct. App. 2011).

Herndon argues in passing that Ohio and Massachusetts law are in conflict because under Massachusetts law, an employer/employee relationship may exist even when the right to control is "very attenuated." *Dias v. Brigham Med. Assoc., Inc.*, 780 N.E.2d 447, 451 (Mass. 2002). However, Massachusetts courts have held that when a commercial truck driver is not required to perform specific jobs, there is no employer/employee relationship. *See Konick v. Berke, Moore Co.*, 245 N.E.2d 750, 753 (Mass. 1969). Here, because (as explained below) Torres's performance of his job was discretionary on his part, there was no employer/employee relationship even under Herndon's reading of Massachusetts law. The outcome of this case is no different whether Ohio or Massachusetts law applies. Therefore, no further choice-of-law analysis is necessary and Ohio substantive law applies on the issue of vicarious liability.

There is also no conflict between the laws of Ohio and Massachusetts for the negligent hiring, training, retention, and supervision claims. Under the law of both states, an employer is liable for the actions of his agent if the employer knew of the agent's violent propensities. *See Steppe v. Kmart Stores*, 737 N.E.2d 58, 66 (Ohio Ct. App. 1999); *see also Foster v. Loft, Inc.*, 526 N.E.2d 1309, 1313 n.8 (Mass. Ct. App. 1988). It is undisputed that Avrora did not have actual knowledge of Torres's propensity for violence, and neither the laws of Ohio nor the laws of Massachusetts impose a duty to conduct criminal background checks such that Avrora would have

had constructive notice of Torres's violent propensities. *See Steppe*, 737 N.E.2d at 67 (holding that employers have no general duty to conduct criminal background checks on potential employees); *Foster*, 526 N.E.2d at 1313, n.8 ("there is no requirement, as a matter of law, that the employer make an inquiry with law enforcement agencies about an employee's *possible* criminal record"). Therefore, because neither the laws of Ohio nor the laws of Massachusetts would impose constructive knowledge on Avrora, the laws are not in conflict, and Ohio substantive law applies on the issue of negligent hiring.

## B. Vicarious Liability

Herndon argues that Torres was an employee of Avrora, and that Avrora should be liable for his conduct under a theory of respondeat superior. The dispositive question for this issue is whether Torres was an employee or independent contractor of Avrora. If Torres was an employee, then Avrora could be found vicariously liable. If Torres was an independent contractor, the claim must fail as a matter of law. *See Laderer v. St. Rita's Med. Ctr.*, 702 N.E.2d 476, 480 (Ohio Ct. App. 1997) (noting that under Ohio law, a hiring party is not vicariously liable for the torts of an independent contractor).

"[W]here the evidence is not in conflict or the facts are admitted, the question of whether a person is an employee or an independent contractor is a matter of law to be decided by the court." *Bostic v. Connor*, 524 N.E.2d 881, 884 (Ohio 1988). Relevant for this inquiry are "indicia as to who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools, and personnel used; who selects the routes travelled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts" to determine if one is an employee or an independent contractor. *Bostic*, 524 N.E.2d at 884. No one factor is conclusive. *Gillum v. Indus. Comm'n*, 48 N.E.2d 234, 235 (Ohio 1943). The key

determination is whether the alleged employer has the right to control the everyday tasks of the alleged employee. *Nese*, 991 N.E.2d at 225. "If such right is in the employer, the relationship is that of employer and employee; but if the manner or means of performing the work is left to one responsible to the employer for the result alone, an independent contractor relationship is created." *Pusey v. Bator*, 762 N.E.2d 968, 972 (Ohio 2002).

The evidence discloses several facts that weigh in favor of finding that Torres was an independent contractor. First, Torres, rather than Avrora, controlled the jobs he took and the hours he worked. *See Richardson v. Mehan*, 430 N.E.2d 927, 929 (Ohio 1982) (finding an employer/employee relationship when "[t]he [employee] was not free to haul and deliver stones whenever the spirit moved him. Rather, he was required to unload his truckload of stone during the hours [his employer] specified."). Khotsin testified:

> [Torres] was free to go to the trip or not to go to the trip. He was operating one truck or another truck. There was no commitment. There was nothing like 8:00 a.m. he has to show up and do some work, check in or check out, nothing like that. We call him. We have a load, we have a truck. We say, you want to go to this trip on this particular date? He says, yes or no. He makes the trip or doesn't make the trip. When he comes back from the trip, we call him and ask about the next trip. He can do two or three trips in a row or he can have a vacation for three months and within those three months he can drive for somebody else.

R. 24-4 at PageID 496–97. Torres confirmed that he was free to accept or decline jobs as he saw fit, and that Avrora always asked—never demanded—that he take a job, and he was free to turn down any job he did not want to take.

Second, Torres controlled the details of his drives, including the route and all mid-trip decisions, another factor that weighs in favor of independent contractor status. *See Bostic*, 524 N.E.2d at 883 (noting that when the employer is only responsible for the result of the job, but the alleged employee controls the manner and means of doing the work, an independent contractor

relationship has been created); *Bookwalter v. Prescott*, 859 N.E.2d 978, 983 (Ohio Ct. App. 2006) (noting that when a trucker is "not required to take any particular route," it is indicative of independent contractor status). Avrora never required Torres to take a particular route on his drives. He controlled the number of hours he drove and the number of days he worked per week, and he was not required to check in with Avrora during the drive. Avrora's only manner of control was that it told Torres where the cars needed to be delivered. *Cf. Bostic*, 524 N.E.2d at 883.

Third, Torres's relationship with Avrora was on a haul-by-haul basis, and he was paid by the job. Torres admitted that he was not working exclusively for Avrora. Indeed, Torres was free to accept or decline Avrora's trips and go work for another company as he saw fit. Both the tenuous relationship and the method of payment indicate that Torres was an independent contractor. *See Harmon v. Schnurmacher*, 616 N.E.2d 591, 595 (Ohio Ct. App. 1992) (noting that "an independent contractor is generally hired to complete a single job only and does not have a continuing, full-time relationship with a single client"); *Freeman v. Ideal Merch., Inc.*, No. 89741, 2008 WL 963063, at *3 (Ohio Ct. App. Apr. 10, 2008) (finding that when a worker is paid by the job rather than by the time, an independent contractor relationship is created).

Finally, Avrora provided Torres with an IRS form-1099 for tax purposes. Under Ohio law, "the use of [1099] forms typically suggests that the parties were not acting in an employer/employee relationship but rather in that of an independent contractor relationship." *Northeast Ohio College of Massotherapy v. Burek*, 759 N.E.2d 869, 875 (Ohio Ct. App. 2001).

Notwithstanding this proof of Torres's independent contractor status, Herndon insists that because Avrora owned the truck that Torres used to haul cars for the company, identified the locations for pick-ups and deliveries, and prohibited Torres from drinking alcohol while on a trip, Torres was an employee. These facts, however, do not establish that Avrora had sufficient control

over Torres's everyday tasks to be deemed his employer. Although using expensive company-owned equipment may be indicative of employee status, *see Bostic*, 524 N.E.2d at 885, no one factor in the calculus is dispositive. *See Gillum*, 48 N.E.2d at 235. Herndon has not overcome the other factors, which weigh heavily in favor of finding Torres was an independent contractor. Neither the fact that Avrora owned the trucks which Torres drove nor the facts regarding Avrora's control of pick-up and delivery points and prohibition of alcohol use were enough to allow a reasonable jury to find the key ingredient of an employer/employee relationship—the right of Avrora to control the manner and means of Torres's performing the work. *See Nese*, 991 N.E.2d at 226.

Yes, Avrora and Torres were in some ways affiliated, but Torres remained his own boss. Construing the facts in the light most favorable to Herndon, no reasonable jury could find that Avrora had the right to control Torres's everyday tasks. We therefore affirm the district court's grant of summary judgment on the vicarious liability claim because, as a matter of law, Torres was an independent contractor, not an employee.

### C. Negligent Hiring, Training, and Supervision

Finally, Herndon argues that Avrora was negligent in hiring, retaining, training, and supervising Torres. Because each of these claims involves essentially the same elements, the only difference being whether the negligent hiring, retention, training, or supervision caused the plaintiff's injury, we discuss these arguments together.

"A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless in the employment of improper persons or instrumentalities in work involving risk of harm to others." *Sygula v. Regency Hosp. of Cleveland E.*, 64 N.E.3d 458, 471 (Ohio Ct. App. 2016). To prevail on a claim for negligent

hiring, or retention, Herndon must establish (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of the employee's incompetence; (4) the employee's act or omission that caused the plaintiff's injuries; and (5) the employer's negligence in hiring, retaining, training, or supervising the employee proximately caused the plaintiff's injuries. *Id.* As explained below, Herndon lacks sufficient evidence to create a jury question as to the third and fifth elements.

As to the third element—Avrora's actual or constructive knowledge of Torres's incompetence—Herndon has offered no supporting proof in light of the governing legal standard. Under this law, "[a]n employer may be negligent if he knew, or should have known, that his employee had a propensity for violence and that the employment might create a situation where the violence would harm a third person." *Steppe*, 737 N.E.2d at 66. The foreseeability of a criminal act is based on the knowledge of the employer, which is determined by a totality of the circumstances. *Id.* at 66–67. Only when the law imposes a duty on an employer to conduct a criminal background check on a prospective employee will the employer be deemed to have had constructive notice. *See Kuhn v. Youlten*, 692 N.E.2d 226, 232 (Ohio Ct. App. 1997). And only when the totality of the circumstances are "somewhat overwhelming" will the employer be held liable. *Id.* Indeed, in the absence of a "known criminal propensity," an intervening criminal act by an employee is not foreseeable. *Peters v. Ashtabula Metro. Hous. Auth.*, 624 N.E.2d 1088, 1091 (Ohio Ct. App. 1993). Therefore, to be held liable under a theory of negligent hiring, the employer must have had actual or constructive knowledge of the alleged violent or criminal propensities. *Rozzi v. Star Personnel Serv., Inc.*, No. CA2006-07-163, 2007 WL 1531427, at * 3 (Ohio Ct. App. May 29, 2007).

It is undisputed that Avrora did not have actual knowledge of Torres's alleged violent or criminal propensities. Therefore, to find Avrora liable for negligent hiring, Herndon must submit sufficient evidence to create a genuine issue of fact that Avrora had constructive knowledge of Torres's violent tendencies. *See Kuhn*, 692 N.E.2d at 232. He has not done so.

Ohio law does not impose a duty on employers to conduct criminal background checks on prospective employees. *See Steppe*, 737 N.E.2d at 67 ("[the employer] was under no duty to conduct a criminal background check"); *see also Rozzi*, 2007 WL 1531427, at *2 ("Ohio law holds that no such duty [to conduct criminal background checks] exists"). Nor do federal transportation regulations require motor carriers to conduct background checks on prospective drivers outside the scope of driving records. *See* 49 C.F.R. § 391.23 (imposing duty on motor carriers to conduct background checks insofar as they relate to a prospective employee's driving history).

Herndon maintains that Avrora imposed a duty on itself to perform background checks on all potential employees because of its internal policies and procedures. An internal policy may impose a duty to perform background checks. *See Rozzi*, 2007 WL 1531427, at *3. But Herndon has not submitted sufficient evidence to create a genuine issue of fact as to whether Avrora had in place a policy that would impose such a duty. Herndon submits only deposition testimony of an Avrora owner in which he states: "It's a lot of stress and things. Driver has to be calm, has to be controllable and he has to be—I don't know, self-controllable." (R. 24-2 at PageID 356–57). Even if such testimony may suggest that background checks may be beneficial, it does not constitute evidence that Avrora conducted such checks as a matter of policy. Because Avrora was under no duty—imposed by law or by its own practices—to conduct a criminal background check, the law does not impute knowledge to Avrora that it would have obtained had it conducted a background check.

Finally, as to the fifth element that Herndon must show—Avrora's negligence—Herndon has not raised a genuine issue of material fact that would allow a jury to find any such negligence in Avrora's hiring, training, retaining and supervision of Torres and that any of those acts of Avrora proximately caused his injuries. When an intervening criminal act by an agent causes the plaintiff's injuries, the defendant's negligence is the proximate cause of the plaintiff's injuries if the defendant could have reasonably foreseen the intervening act. *See Taylor v. Webster*, 231 N.E.2d 870, 872–73 (Ohio 1967). An act is reasonably foreseeable "if the employer knew or should have known of the employee's propensity to engage in similar criminal, tortuous, or dangerous conduct." *Armaly v. City of Wapakoneta*, No. 2-05-45, 2006 WL 1976191, at \*11 (Ohio Ct. App. July 17, 2006). Herndon cites no law to support his claim that Avrora knew or should have known of Torres's propensity to engage in violent conduct. Rather, he argues that Avrora "failed to use any modicum of common sense in its decision to hire Torres." (Appellant's Br. at 36). This bare assertion is not enough to create a triable issue as to negligence.

Therefore, because Herndon has not raised a genuine issue of material fact as to Avrora's knowledge of Torres's alleged criminal propensity or that Avrora's hiring, retaining, supervision, or training of Torres proximately caused his injuries, his negligence claims must fail.

## IV.

We determine, as did the district court, that Herndon has not raised a genuine issue of material fact that would allow a reasonable jury to find either that Torres was an employee of Avrora or that Avrora acted negligently in its relationship with Torres. There is no evidence from which a reasonable jury could find that Avrora had actual or constructive knowledge of any criminal or violent tendencies of Torres. Therefore, we **AFFIRM** the district court's grant of summary judgment for Avrora.

13